Larry BLANDING et al., Plaintiffs,

v.

E. M. DUBOSE et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

The COUNTY COUNCIL OF SUMTER COUNTY, SOUTH CAROLINA et al., Defendants.

Civ. A. Nos. 78–764, 78–883.

United States District Court,
D. South Carolina,
Columbia Division.

Feb. 17, 1981.

Donald James Sampson, Greenville, S.C., Howard P. King, Sumter, S.C., Randall T. Bell, Columbia, S.C., for plaintiffs.

C. Tolbert Goolsby, Jr., Asst. Atty. Gen., Meg Slocum, Asst. U. S. Atty., Columbia, S.C., D. Gene Rickenbaker, Sumter, S.C., for defendants.

Before RUSSELL, Circuit Judge, and BLATT and CHAPMAN, District Judges.

ORDER

These two actions seek similar relief and have been consolidated since the time of filing in June 1978. Civil Action No. 78–764 was commenced by certain private citizens of Sumter County shortly before the United States of America brought Civil Action 78–883. Each suit is brought pursuant to Section 5 and Section 12(d) of the Voting Rights Act of 1965, as amended, 42 U.S.C. §§ 1973c and 1973j(d).

The plaintiffs have moved for additional injunctive relief contending that the defendants have not complied with the preclearance requirements of § 5, and the defendants have moved for summary judgment alleging that they have complied with all provisions of the Voting Rights Act and that the Attorney General of the United States failed to file an objection to the county's last submission for preclearance until long after the 60 day time limit for objection by the Attorney General had passed.

Shortly after the suits were filed this Court issued its June 21, 1978 order enjoining Sumter County from conducting any elections for County Council in 1978 and the matter has been held in abeyance since that time. The Court now has before it a number of exhibits and affidavits relating to the three submissions by Sumter County to the United States Attorney General seeking preclearance of various changes in the manner of electing Sumter County council members. There is no dispute as to any material fact and the case is ripe for consideration under Rule 56 F.R.C.P.

On November 1, 1964, and for a number of years prior thereto, Sumter County, as most counties in South Carolina, was governed by its legislative delegation made up of its state senator and the members of the State House of Representatives from Sumter County. The county delegation acted through a county board of supervisors, which was a ministerial and supervisory body with no general police power, no ordinance, taxing or fiscal powers, and its members were appointed by the Governor upon recommendation of the county's legislative delegation.

In 1967 a local bill, Act No. 371, was passed by the General Assembly, creating a new county governing body for Sumter County. This body was designated as the Sumter County Commission and consisted of seven members elected at-large from the county. The Commission was vested with certain powers including the power to pass ordinances, make appropriations and levy taxes. A seven member commission was elected by the voters of the county in November 1968 and began service in January of the following year. Elections to the County Commission were held in 1970, 1972 and 1974 under Act No. 371. Although this Act represented a change requiring preclearance under § 5 of the Voting Rights Act, no filing or submission was made to the United States Attorney General until after the General Assembly passed the Home Rule Act, (Act No. 283 of 1975) § 5–9–10 et seq., South Carolina Code of Laws, 1976. The basic purpose of the Home Rule Act was to transfer from the General Assembly to county governing bodies the necessary powers to handle the normal day-to-day affairs of local government. The Home Rule Act provided five alternative forms of county government and permitted each county to hold a referendum prior to July 1, 1976, to select one of the available forms of government and also to determine whether members of the county governing body should be elected from single-member districts or at-large. The Act further provided that if a county did not hold a referendum then its form of government and method of election would be the one which most nearly corresponded to the existing form and method of election in that county. The Act specifically provided that in the absence of a referendum Sumter County

would have the council-administrator form of government and at-large method of election effective July 1, 1976.

Pursuant to § 5 of the Voting Rights Act of 1965, the Attorney General of South Carolina submitted the Home Rule Act to the Justice Department for preclearance. No objection was made to the Home Rule Act, but the Justice Department advised that any Home Rule Referenda conducted under the Act would constitute a change in local government subject to additional preclearance under § 5. The Department also advised that counties which did not conduct an election to change the form of government and were thereby assigned a form of government under the Act would be considered as having made a change which would be subject to preclearance.

Sumter County did not hold a referendum under the Voting Rights Act and its council-administrator form of government with at-large method of election went into effect on July 1, 1976. Thereafter the Sumter County Council passed a resolution and ordinance adopting that form of government and method of election.

On August 13, 1976, the Sumter County Administrator submitted the Home Rule Ordinance to the United States Attorney General. On December 3, 1976, the Attorney General objected to the at-large method of election of the council but interposed no objection to the implementation of the council-administrator form of government. Shortly thereafter the county requested reconsideration of the objection, and the Attorney General asked for and received additional information, but on April 28, 1978 declined to withdraw his objection. Shortly thereafter these actions were commenced to prevent future county council elections from being held on an at-large basis.

In an effort to have the Attorney General withdraw his objection and to conclude these lawsuits, County Council set a referendum question on the method of election for the general election in November 1978. Voters were asked to choose between single-member districts and at-large elections for selecting councilmen and the final vote was in favor of at-large election.

Since this referendum approved the method of selecting officials different from that in effect on November 1, 1964, Sumter County submitted a new preclearance application to the Attorney General on June 4, 1979. The Attorney General did not object to this preclearance request until long after the 60 day period for his action had expired. In an effort to avoid the consequences of his failure to object within the 60 day period, the Attorney General asserts that the preclearance submission of June 4, 1979 was a request for reconsideration of the 1976 submission. This Court will not be a party to the plaintiff's effort to excuse his failure to act by mislabeling a submission for preclearance as a "request for reconsideration."

The Referendum Submission was mailed to the Attorney General on June 1, 1979 and a postal return receipt is in evidence showing it was received by the Attorney General on June 4, 1979. This submission contained all of the information required by the guidelines for § 5 submissions, 28 C.F.R. § 51–10(a). No additional information was requested by the Attorney General and the 60 day period began to run on June 4.

A conference was held between Sumter County officials and Department of Justice officials on July 23, 1979 and the Attorney General contends that he acted within 15 days of this conference, but again he is attempting to mislabel the submission as a request for reconsideration. 28 C.F.R. § 51–3(d) and § 51–24 state that the Attorney General shall have at least 15 days for considering requests for reconsideration following a conference held at the submitting authority's request. However, the Attorney General did not act until September 27, 1979 when he notified the defendants that his objection would not be withdrawn.

The Attorney General could not have mistaken the 1979 submission for a reconsideration of the 1976 submission. First, there had already been a request for reconsideration made by the defendants and declined by the Attorney General. Second, 28 C.F.R. § 51.21(b) requires a request for reconsider-

ation to be made within ten days of an objection and to be based on new information and not information previously furnished under § 51–10(a). In view of this there could have been no misunderstanding that the June 1979 submission was new and covered a change in voting procedure occurring after the 1976 submission. The county was required by law to make a new submission following the referendum. *United States v. Board of Commissioners of Sheffield, Alabama*, 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978).

In *Morris v. Gressette*, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977) the Supreme Court referred to § 5 remedies as being "unusual" and "severe" and submission to the Attorney General must be "an expeditious alternative to declaratory judgment actions." Compliance with § 5 time requirements by the Attorney General is measured solely by the absence, for whatever reason, of a timely objection by the Attorney General.

From the above the following facts are conclusive:

1. Sumter County is covered by the Voting Rights Act of 1965;

2. The referendum of 1978 was a change in voting procedure from that in effect on November 1, 1964;

3. This change required preclearance by submission to the Attorney General or the filing of a declaratory judgment action in the District Court for the District of Columbia;

4. Sumter County properly filed a submission for preclearance of the voting procedure change created by the referendum of 1978, which submission was received by the Attorney General on June 4, 1979 and contained all of the information required for such a submission; and

5. The Attorney General did not file his objection to this submission until September 27, 1979;

6. Sumter County may enforce the 1978 referendum approving at-large elections for County Council because the Attorney General failed to object to the submission within 60 days after its receipt.

IT IS, THEREFORE, ORDERED that summary judgment be entered in favor of the defendants in both cases.

AND IT IS SO ORDERED.