575 So.2d 956 (1990)
GREENVILLE PUBLIC SCHOOL DISTRICT; Mary Haynes, Carolyn Morris, Ann Brent, Roy Campbill, III, and John Richards, in their official capacities as members of the Greenville Public School District Board of Trustees
v.
WESTERN LINE CONSOLIDATED SCHOOL DISTRICT; Ruby Slade, Dot Gilder, Tootie Trotter, Clarence Hall, Jr. and Martha Carroll, in their official capacities as members of the District Board of Education.
No. 07-CA-59534.
Supreme Court of Mississippi.
December 12, 1990.
As Corrected on Denial of Rehearing March 6, 1991.
*957 Perry Sansing, Brunini Granthan Grower & Hewes, Jackson, for appellants.
J. Robertshaw, Robertshaw Terney Noble & Smith, Greenville, for appellees.
Mike C. Moore, Atty. Gen. and Giles W. Bryant, Sp. Asst. Atty. Gen., Jackson, for amicus curiae.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
BLASS, Justice, for the Court:
Plaintiff, Greenville Public School District, sought a declaratory judgment that 14 square miles of territory lying in the Western Line Consolidated School District automatically became part of the Greenville District when that territory was annexed by the City of Greenville. This would have been true under Miss. Code Ann. § 37-7-611, prior to the adoption of The Education Reform Act of 1986, ch. 492, Laws of Mississippi 1986, Section 47 of which purports to repeal that section. Plaintiff contends that the repealing section was not effective because, it argues, the section was not precleared under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.
Greenville further alleged that although the Mississippi Attorney General submitted portions of the legislation, section 47 of Chapter 498 was neither submitted nor precleared. Defendant, Western Line, counterclaimed seeking costs and attorney fees under Rule 11(b) and praying that Greenville be enjoined from interfering with the collection of Western Line school taxes on property located within the proposed corporate limits of Greenville.
On Defendant's Motion for Summary Judgment, the circuit court ordered: (1) that funds collected and escrowed on behalf of Greenville Public School District be released and returned to those from whom collected and that the plaintiff pay the reasonable and necessary expenses incurred in making refunds to taxpayers; (2) that despite uncertainty of the repeal of § 37-7-611, the circuit court lacked jurisdiction to rule on the applicability of section 5 of the Voting Rights Act of 1965, until definitive rulings were made by the Supreme Court of Mississippi or the Attorney General of the United States; (3) that due to teacher employment contract requirements and the need to notify students of their status each school district was to retain its respective status quo; (4) that plaintiff pay defendant's expenses and attorney fees. Plaintiff has appealed.
For the reasons which follow, we find that Greenville was not entitled to the declaratory *958 judgment, and was properly enjoined from disturbing the status quo of the respective school districts, but that the circuit court erred in ordering plaintiff to pay defendant's expenses and attorney fees.

I.
On July 22, 1986, The Education Reform Act of 1986, Senate Bill No. 2117, Chapter 492, Laws of Mississippi 1986, was submitted to the Attorney General of the United States for preclearance pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. The submission included the act in its entirety; a copy of the roll call votes of both houses; and a looseleaf booklet entitled "Senate Bill No. 2117  Comparison of Current Law and New Law" which set forth each section of the then current law followed by each applicable section of Senate Bill Number 2117 for explanatory purposes. The submission states in part, "[f]or the sake of brevity, the submission will only set forth the particular sections which deal primarily with the voting rights even though the complete act is submitted for review.". (emphasis added). The submission then lists specific provisions of the Act among them Section 52, amending Miss. Code Ann. § 37-7-103.
The stated purpose of the legislation was to "provide that all public school districts in the state of Mississippi shall have a common system of administration." The legislation repealed, enacted and re-enacted numerous statutes as part of an statewide over-haul of the boards administering public education. Prior to the enactment, several articles controlled the boards of school districts, depending on the nature of the districts.[1] Miss. Code Ann. § 37-7-103 (1972) was enacted to control the abolition, alteration or creation of school districts after the reform. This statute gives the school board of any school district full jurisdiction, power and authority to alter the boundaries of any school district and requires the mutual consent of adjoining districts in the alteration of abutting boundaries. All conflicting statutes concerning school boundaries were repealed, including § 37-7-611.
Section 47 of the Bill, not among the highlighted sections but part of the package, repeals those sections of Mississippi Code of 1972 which provide for the creation and operation of municipal separate school districts, including § 37-7-611.
By letter of August 29, 1986, Assistant Attorney General, Civil Rights Division, Wm. Bradford Reynolds, advised the Mississippi Attorney General that the Justice Department would interpose no objection to the voting changes occasioned by Chapter 492, S.B. No. 2117 (1986). The letter points out that the failure to object would not bar any subsequent judicial action to enjoin the enforcement of any change should additional information which would require objection materialize.
For reasons which do not appear in this record, on December 30, 1987, Mississippi Attorney General Pittman again submitted Chapter 492, Section 47 to the U.S. Attorney General for preclearance. By letter dated March 31, 1989, the Attorney General of the United States objected to the repeal of § 37-7-611. The Mississippi Attorney General's request for reconsideration of this objection was most recently denied by letter of May 25, 1990.
The annexation by the City of Greenville of the territory in question, the action which gave rise to the instant controversy, also required preclearance under the Voting Rights Act. Preclearance had not been obtained when this suit was commenced. The U.S. Attorney General interposed an objection to the annexation by the City of Greenville[2] of the territory at issue in this case, on February 10, 1989. This objection was withdrawn on February 11, 1990, on
*959 Greenville's second request for reconsideration.

II.
We are called upon here to examine The Education Reform Act of 1986, in conjunction with Section 5 of the Voting Rights Act of 1965 and proceedings undertaken thereunder, to determine the effect on the school districts in question. This requires a determination of whether, and to what extent, the Education Reform Act of 1986 has been precleared, pursuant to section 5 of the Voting Rights Act of 1965.
State courts have inherent authority, and are presumptively competent, to adjudicate claims arising under the laws of the United States. Yellow Freight Sys. v. Donnelly, ___ U.S. ___, ___, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834, 839 (1990), quoting Tafflin v. Levitt, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990); see Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477-78, 101 S.Ct. 2870, 2874-75, 69 L.Ed.2d 784 (1981); Claflin v. Houseman, 93 U.S. 130, 136-37, 23 L.Ed. 833 (1876). "[T]he presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." Gulf Offshore, 453 U.S. at 478, 101 S.Ct. at 2875, 69 L.Ed.2d at 791. "[E]ven a finding of exclusive federal jurisdiction over claims arising under a federal statute usually `will not prevent a state court from deciding a federal question collaterally.'" [citations omitted] Hathorn v. Lovorn, 457 U.S. 255, 266, 102 S.Ct. 2421, 2428, 72 L.Ed.2d 824, 835 (1982) (quoting Gulf Offshore, 453 U.S. at 483, n. 12, 101 S.Ct. at 2878, n. 12).
We recognize this concurrent jurisdiction, and its logical corollary, the duty and obligation of the courts of this state to enforce rights created under federal statutes. Burrell v. Mississippi State Tax Comm'n, 536 So.2d 848, 863 (Miss. 1988).
The courts of this state have no authority to grant preclearance which may be secured in only two ways: (a) administratively, via submission to the Attorney General of the United States, coupled with his failure to interpose timely objection (about which we say more below) or (2) judicially, via a declatory judgment action in the United States District Court for the District of Columbia. 42 U.S.C. § 1973c. There is nothing grudging in our acceptance of this view. See Harrison County v. City of Gulfport, 557 So.2d 780, 788 (Miss. 1990) (and cases cited therein). However, "other courts may decide the distinct question of whether a proposed change is subject to the Act." Hathorn, 457 U.S. 255, 267, 102 S.Ct. 2421, 2429, 72 L.Ed.2d 824, 835 (citing Allen v. State Bd. of Elections, 393 U.S. 544, 557-60, 89 S.Ct. 817, 827-29, 22 L.Ed.2d 1 (1969)); McDaniel v. Sanchez, 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724 (1981). A necessary part of the authority to decide matters pertaining to preclearance is the determination, commonly exercised by United States District Courts, of whether the United States Attorney General has interposed a valid objection within the statutory 60-day period and the related question of whether a covered jurisdiction has submitted a proposed change for preclearance. See, e.g., Lucas v. Bolivar County, Mississippi, 567 F. Supp. 433, 435 (N.D. Miss. 1983); Blanding v. Dubose, 509 F. Supp. 1334, 1335 (D.S.C. 1981); rev'd on other grounds, 454 U.S. 393, 102 S.Ct. 715, 70 L.Ed.2d 576 (1982); McRae v. Board of Education, 491 F. Supp. 30, 32 (N.D.Ga. 1980); Garza v. Gates, 482 F. Supp. 1211 (W.D.Tex. 1980); Woods v. Hamilton, 473 F. Supp. 641, 644-48 (D.S.C. 1979). Under the authority of Hathorn v. Lovorn, 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982), this Court has the power to decide questions pertaining to preclearance under § 5 of the Voting Rights Act. Under in Garcia v. Uvalde County, 455 F. Supp. 101, 102 (W.D.Tex. 1978), this Court can review the circumstances under which the objection letter was issued in order to determine whether it was validly and timely issued. The courts of the State of Mississippi clearly must, and do, have the power to declare whether or not the acts of the Legislature of the State are in effect. This Court has *960 that power.[3] Failure to exercise this power would do a disservice not only to the two districts involved in this case, but the entire state.

III.

HAS FEDERAL PRECLEARANCE BEEN OBTAINED FOR THE REPEAL OF MISS. CODE ANN. § 37-7-611?
Senate Bill No. 2117, entitled "The Uniform School Law of 1986", was signed by the Governor of Mississippi, on April 15, 1986. The Act was submitted to the United States Attorney General for preclearance[4] on July 22, 1986 and was received by the Department of Justice on July 23, 1986.[5] The U.S. Attorney General has sixty days from the receipt of the submission by the Department of Justice in which to interpose an objection. 28 C.F.R. § 51.8 (1986). During this 60-day period, the U.S. Attorney General did not request additional information. By letter of August 29, 1986, Assistant Attorney General, Civil Rights Division, Wm. Bradford Reynolds, advised Mississippi Attorney General Edwin Lloyd Pittman that the Justice Department would interpose no objection to the voting changes occasioned by Chapter 492, S.B. No. 2117 (1986).[6]
In his letter of May 25, 1990, the U.S. Attorney General declared that the State of *961 Mississippi had not submitted the voting change in an "unambiguous and recordable manner," citing Allen v. State Board of Elections, 393 U.S. 544, 571, 89 S.Ct. 817, 834, 22 L.Ed.2d 1 (1969). Accord, McCain v. Lybrand, 465 U.S. 236, 104 S.Ct. 1037, 79 L.Ed.2d 271 (1984); and Procedures for the Administration of Section 5 (28 C.F.R. §§ 51.26(d), 51.27). The U.S. Attorney General took the position that the prior submission of the Uniform School Law did not contain any reference whatsoever to the repeal of Miss. Code Ann. § 37-7-611, as illustrated in the following statement:
Both the prior submission of the Uniform School Law and the prior submission of the 1978 act identified specific voting changes adopted by those statutes, but neither submission contained any reference to the voting changes which the state now claims were precleared.
(emphasis added)
The letter refers to case law interpreting Section 5 which charges the submitting jurisdiction with responsibility for identifying voting changes, not the United States Attorney General, and concludes that the State of Mississippi, should have uncovered voting changes "of which the state itself seemingly was unaware at the time prior submissions were made." The U.S. Attorney General then negates any claim made by the State of Mississippi that the repeal of section 37-7-611 has been previously submitted and precleared.

A.
To ascertain the status of Mississippi Law, we are called upon to determine whether or not the submission in 1986 of the Education Reform Act included a submission of the repealer of § 37-7-611.
On July 22, 1986, The Education Reform Act of 1986, Senate Bill No. 2117, Chapter 492, Laws of Mississippi 1986 was submitted to the Attorney General of the United States for preclearance pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. The submission included the act in its entirety; a copy of the roll call votes of both houses; and a looseleaf booklet entitled "Senate Bill No. 2117  Comparison of Current Law and New Law" which set forth each section of the then current law followed by each applicable section of Senate Bill Number 2117 for explanatory purposes. The submission states in part, "[f]or the sake of brevity, the submission will only set forth the particular sections which deal primarily with the voting rights even though the complete act is submitted for review." The submission then lists specific provision of the Act among which is Section 52 amending § 37-7-103, and Section 57 amending § 37-7-113. The amended §§ 37-7-103 and -113 were quoted with emphasis on the language deleted in the re-enacted section. Prior to 1986 § 37-7-103 stated:
§ 37-7-103. Abolition, alteration or creation of districts by county board of education.
After school districts have been reconstituted and created in the manner prescribed by Article 1 of this chapter, the county board of education shall have full jurisdiction, power, and authority, at any regular meeting thereof or at any special meeting called for that purpose, to abolish any existing district other than a municipal separate school district, to change or alter the boundaries of any such district, to create any new districts, and to otherwise create, alter, or abolish any of the school districts of such county, other than the municipal separate school districts. In addition thereto, with the consent of the board of trustees of the municipal separate school district involved, the county board of education may add to such municipal separate school districts any part of the county adjoining same, and with the consent of the board of trustees of the municipal separate school district involved, the county board may detach territory from such municipal separate school district and annex same to an adjoining district in the county school system.
The amended § 37-7-103 reads:

From and after July 1, 1987, the school board of any school district shall have full jurisdiction, power, and authority, at any regular meeting thereof or at any *962 special meeting called for that purpose, to abolish such existing district, or to reorganize, change or alter the boundaries of any such district.[ ] In addition thereto, with the consent of the school board [ ] of the [ ] school district involved, the school board [ ] may add to such [ ] school district [ ] any part of the school district adjoining same, and with the consent of the school board [ ] of the school district involved, [ ] may detach territory from such school district and annex same to an adjoining district.[ ]
Changes in the statute were highlighted as above in the original submission. The brackets indicate language deleted, emphasis indicates language changed.
Before 1986, § 37-7-113 required only county boards to submit proposed changes to the state educational finance commission for approval prior to creating, abolishing, or altering any school district. The amended section required all school boards to submit reorganization plans to this agency, and states:
37-7-113. Necessity of approval by state educational finance commission.
Notwithstanding any of the foregoing provisions, it is hereby expressly provided that no order of the school board reorganizing, abolishing or altering any school district, whether same be taken with or without a petition therefor, shall be final unless and until said proposed reorganization, alteration or abolition shall be submitted to and approved by the State Board of Education. In the event the proposed action shall be disapproved by the State Board of Education, the same shall be void and of no effect. In the event of the filing of any petitions with the school board under the provisions of said sections, the school board shall verify same and make a determination of whether same are signed by the requisite number of qualified electors. The finding of the school board upon such question shall be final and conclusive for the purpose of the submission of said matter to the State Board of Education and the approval or disapproval of the action by said board.
Section 47 of the Bill[7] repeals those sections of Mississippi Code of 1972 which provide for the creation and operation of municipal separate school districts, among which is § 37-7-611, which states, in pertinent part:
Where the corporate limits of any municipality which constitutes a municipal separate school district, either with or without added territory, are extended so as to include the whole or any part of an existing adjacent school district in the county school system or municipal separate district, then such adjacent school district, or such part thereof as is included within the corporate limits of the municipality by reason of the extension thereof, shall thereby automatically be merged with and become a part of such municipal separate school district.
* * * * * *
By this same act, those sections of Mississippi Code of 1972 providing for the creation and operation of line consolidated, isolated, special municipal separate and county school districts were also repealed.
The act was designed to create one, and only one, method by which school districts throughout the State of Mississippi were created, reorganized, abolished or altered. It was also crafted to provide that any change in any district was subject to prior approval by the state educational finance commission, to insure fiscal viability.
The U.S. Attorney General, in his letter of May 1990, cites 28 C.F.R. § 51.27 (1989), which currently governs the required contents of submission. This regulation provides that a copy of the repealed statute be included in the submission. The regulations controlling submissions in effect in *963 1986, when the State of Mississippi submitted Senate Bill 2117, 28 C.F.R. §§ 51.1 through 51.54, did not require the inclusion, by the covered jurisdiction, of a copy of the prior law being amended or repealed.
The required contents of a submission were set out in 28 C.F.R. § 51.25 (7-1-86 Edition). This regulation stated in pertinent part:
§ 51.25 Required contents
Each submission should contain the following information or documents to enable the Attorney General to make the required determination pursuant to Section 5 with respect to the submitted change affecting voting:
(a) A copy of any ordinance, enactment, order or regulation embodying a change affecting voting.
(b) If the change affecting voting is not readily apparent on the face of the document provided under paragraph (a) or is not embodied in a document, a clear statement of the change explaining the difference between the submitted change and the prior law or practice, or explanatory materials adequate to disclose to the Attorney General the difference between the prior and proposed situation with respect to voting.
In addition, in 1986, 28 C.F.R. § 51.35 (7-1-86 Edition) governed the Attorney General's authority to request additional information from submitting jurisdictions. At that time, this regulation imposed a duty on the U.S. Attorney General to request additional information if the submission was incomplete, providing as follows:
§ 51.35. Obtaining information from the submitting authority.
(a) If a submission does not satisfy the requirements of § 51.25, the attorney general shall request further information as is necessary from the submitting authority and advise the submitting authority that the 60-day period will not commence until such information is received by the Department of Justice. The request shall be made as promptly as possible after the receipt of the original inadequate submission and no later than the 60th day following its receipt.
(emphasis added)
Although we recognize that federal courts defer to the interpretations of the Voting Rights Act made by the U.S. Attorney General, we cannot ignore the fact that the Attorney General's reading of his own letter is contrary to any rational interpretation of that letter. Additionally, while recognizing that the opinion of the U.S. Attorney General is given great weight, Blanding v. DuBose, 454 U.S. 393, 401, 102 S.Ct. 715, 719, 70 L.Ed.2d 576, 583 (1982), we are not obliged to defer to his interpretation of the Voting Rights Act when he has obviously applied the wrong regulations. Nor are we obliged to ignore black letter principles of statutory construction.
It is clear, reading the repealed § 37-7-103 and the reenacted § 37-7-103 that the only circumstance which is addressed is that in which a municipal and county school district is altered. Even assuming § 37-7-611 was not specifically repealed, it was implicitly repealed by § 37-7-103. Assuming, for argument only, the repeal of § 37-7-611 was not submitted for preclearance, the two statutes which were specifically precleared, §§ 37-7-103 and 113 are clearly inconsistent with § 37-7-611. A repeal may arise by necessary implication from the enactment of a subsequent act. 1A N. Singer, Statutes and Statutory Construction § 23.09, at 332 (4th ed. 1985). When a subsequent enactment covering a field of operation co-existent with a prior statute cannot by any reasonable construction be given effect while the prior law remains in existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict. Cooper v. General Dynamics, Corvair Aerospace Div., 533 F.2d 163 (5th Cir.1976). The intent to repeal all former laws upon a subject is made apparent by the enactment of subsequent comprehensive legislation establishing elaborate inclusions and exclusions of the persons, things and relationships ordinarily *964 associated with that subject. Singer § 23.13, at 358.

B.
The case here is unlike that in U.S. v. Sheffield Bd. of Comm'rs., 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978) in which the Board of Sheffield, Alabama wished to hold a referendum to determine voter preference for a commission or mayor-council form of government. Following the approval of a change to a mayor-council government, the U.S. Attorney General notified the city that, although there was no objection to the referendum itself, any change in the government would require a preclearance under § 5 of the Voting Rights Act. Thereafter, the U.S. Attorney General objected to the proposed method of selecting councilmen. The Sheffield Court held that approval of the referendum did not constitute an approval of the change in form of government under the preclearance procedures and the city had not complied with § 5 of the Voting Rights Act, and could not implement the mayor council government.
In Sheffield, the U.S. Attorney General specifically withheld preclearance of the change in government. In the case before this court, the U.S. Attorney General's letter specifically precleared the entire Education Reform Act, after which the U.S. Attorney General has denied that one section of that act was submitted.
Allen v. State Bd. of Elections, 393 U.S. 544, 89 S.Ct. 817, cited by the U.S. Attorney General in the letters denying preclearance of the repeal of § 37-7-611 is also distinguishable. This was a consolidation of four cases. Although none of the voting changes were "formally" submitted to the U.S. Attorney General, appellees argued that the Attorney General was aware of the changes. In rejecting this argument, the court stated that, although no formal procedure was required, the Act requires that the State in some unambiguous and recordable manner submit any legislation or regulation in question directly to the Attorney General with a request for his consideration pursuant to the Act. 393 U.S. at 571, 89 S.Ct. at 834, 22 L.Ed.2d at 20.
It should be clear that the facts here are significantly different from those in Allen. First, the entire Uniform School Law of 1986, Senate Bill No. 2117, Chapter 492, Laws of Mississippi, 1986 was formally submitted to the U.S. Attorney General on July 22, 1986. Second, included in the submission was "Exhibit `C' ... a looseleaf booklet entitled `Senate Bill Number 2117  Comparison of Current Law and New Law' which merely sets forth each section of the current law followed by each applicable section of Senate Bill Number 2117 for explanatory purposes." In this booklet, and in the bill, Sections 47-51, repealing the laws which provided for the creation and operation of municipal separate school districts, special municipal separate school districts, line consolidated school districts and isolated school districts, and for the reorganization of school districts in 1957, are immediately followed by Section 52 which establishes one, and only one, method by which school districts are abolished, altered or created. The section clearly highlights changes in the old § 37-7-103 in which the boundaries of any school board in the state is to be altered, only with the consent of the adjoining school board. Third, section 52 was specifically pointed out in the July 22, 1986, letter of submission of the entire act by the Mississippi Attorney General. The U.S. Attorney General replied, "The Attorney General does not interpose any objection to the voting changes occasioned by Senate Bill No. 2117 (1986) as identified in your July 22, 1986 letter."
Morris v. Gressette, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977) presented the question of whether the U.S. Attorney General's decision not to object to a covered state's proposed change in its laws, submitted for his consideration under § 5, was subject to judicial review. In 1971 South Carolina enacted Act 932 reapportioning the State Senate. This Act was submitted to the U.S. Attorney General for preclearance. Prior to the objection of the U.S. Attorney General, several suits were filed in the U.S. District Court of South Carolina challenging the Act as violative of the fourteenth *965 and fifteenth amendments. Notwithstanding the involvement of the U.S. Attorney General, the South Carolina District Court retained jurisdiction of the case and a new reapportionment plan was filed which that court found constitutional. The U.S. Attorney General did not interpose an objection to the new plan, in deference to the District Court's decision. This failure to object to the new plan was challenged in the U.S. District Court for the District of Columbia, which directed the Attorney General to consider the plan without deference to the South Carolina court's decision, after an objection was interposed. On appeal the D.C. court affirmed. The District Court of South Carolina refused to enjoin the implementation of the new plan, holding that the requirements of § 5 were satisfied when the Attorney General failed to object within 60 days after submission, and the Administrative Procedure Act did not authorize judicial review of the Attorney General's determination not to interpose an objection in deference to the District Court's ruling. The Supreme Court affirmed.
In reaching this decision, the Supreme Court noted:
The nature of the § 5 remedy which this Court has characterized as an "unusual" and "severe" procedure, (citation omitted), strongly suggests that Congress did not intend the Attorney General actions under that provision to be subject to judicial review. Section 5 requires covered jurisdictions to delay implementation of validly enacted state legislation until federal authorities have had an opportunity to determine whether that legislation conforms to the Constitution and to the provisions of the Voting Rights Act.
432 U.S. at 501-02, 97 S.Ct. at 2419, 53 L.Ed.2d at 517.
The court examined and noted the intent of Congress to provide covered jurisdictions with an expeditious alternative to declaratory judgment actions, "[t]he congressional intent is plain: The extraordinary remedy of postponing the implementation of validly enacted state legislation was to come to an end when the Attorney General failed to interpose a timely objection based on a complete submission." 432 U.S. at 504, 97 S.Ct. at 2420, 53 L.Ed.2d at 518. The court concluded, "[W]e hold that the objection interposed by the Attorney General to § 2 of Act 1205 on July 20, 1973, nunc pro tunc, is invalid. South Carolina is therefore free to implement its reapportionment plan for the State Senate." 432 U.S. at 507, 97 S.Ct. at 2422, 53 L.Ed.2d at 520.
Consistent with Morris v. Gressette, we find that the U.S. Attorney General precleared the entire 1986 act when he failed to interpose any objection to the July 22, 1986, submission; therefore, any subsequent objection to a portion of that act is invalid and the 1986 act was effective from the date of preclearance.
Woods v. Hamilton, 473 F. Supp. 641 (D.S.C. 1979) was an action to enjoin the enforcement of ordinances implementing home rule in Charleston County, South Carolina. The South Carolina 1975 Home Rule Act had been precleared by the U.S. Attorney General. By letter to the Attorney General of South Carolina, the U.S. Attorney did not object to the holding of a referendum on the question of the form of government of each county and city in the state, while attempting to reserve the right to object to the implementation in individual counties of the several forms of government. Finding the decision in Morris v. Gressette controlling, the district court characterized the U.S. Attorney's tardy decision to interpose an objection as a belated attempt to label the implementation of the changes as an "uncleared change."
We find here, as the South Carolina court did in Woods v. Hamilton, that the U.S. Attorney General is belatedly attempting to reconsider his earlier preclearance by labeling that which he wishes to reconsider as "uncleared". Here, as in South Carolina, the state Attorney General submitted the entire act for consideration. Here, as in Woods v. Hamilton, the U.S. Attorney is not entitled to a "second bite" at the Mississippi Education Reform Act of 1986.

C.
Recent Mississippi cases have dealt with the impact of municipal annexations on adjacent county school districts. In re City of Booneville, Prentiss Cty., 551 So.2d 890 *966 (Miss. 1989); Harrison County v. City of Gulfport, 557 So.2d 780 (Miss. 1990); Matter of Boundaries of Jackson, 551 So.2d 861 (Miss. 1989).
In Harrison County the primary issue was the standing of the Harrison County Board of Supervisors and the County Board of Education to contest the annexation of county territory by the City of Gulfport and the City of Biloxi, respectively. Nothing in this opinion should be interpreted to deny the standing of the Harrison County officials.
Booneville more directly addressed the status of the repeal of § 37-7-611. Assuming the statute had not been repealed, the loss of the territory annexed by the City of Booneville would devastate the Prentiss County School District. Objectors argued that the chancellor was obliged to and erred in not considering the impact of the annexation on the school districts due to the fact that § 37-7-611 had not been repealed. The court recognized that the issue of preclearance is a federal question, but noted the inconsistency in Mississippi law occasioned by the dispute over the presumably incomplete preclearance of the Education Reform Act, stating that the Prentiss County School District would not automatically lose the children in the annexation area due to the procedures established by Miss. Code Ann. § 37-7-103, et seq. The court concluded that these procedures, separate and apart from the statutes governing annexation of territory by a municipality, precluded the alteration of the status quo of the Prentiss County School System.
Matter of Boundaries of Jackson, 551 So.2d 861 (Miss. 1989) recognizes the limited authority of this court. Although we cannot grant preclearance, we can clearly recognize that it has been accomplished.

IV.

WAS THE AWARD OF EXPENSES AND ATTORNEY'S FEES TO WESTERN LINE PROPER?
Western Line prayed for attorney fees under Miss.R.Civ.P. 11. In defendant's "Memorandum Supporting Motion for Summary Judgment" the court is asked to impose sanctions under this rule, which provides for the imposition of expenses and attorneys' fees only if a party "files a motion or pleading which, in the opinion of the Court, is frivolous or is filed for the purpose of harassment or delay." Miss.R. Civ.P. 57 allows for declaratory relief in any "actual controversy that has not reached the stage at which either party may seek a coercive remedy."
A pleading is frivolous only when the pleader has no hope of success. Tricon Metals & Servs., Inc. v. Topp, 537 So.2d 1331, 1335 (Miss. 1989). There was and is a very real dispute over the status of the school districts in this case. In light of the circuit court's own order which states that Mississippi law is unclear as a result of the dispute over preclearance, we cannot say that the pleading filed by Greenville is frivolous.[8] Finding the circuit court abused its discretion in imposing sanctions, we reverse on that issue. Nationwide Mut. Ins. Co. v. Evans, 553 So.2d 1117, 1119 (Miss. 1989).
Accordingly, we affirm as to the release and return of the escrowed funds and payment by the plaintiff of the costs of such refund, and reverse as to the payment of attorneys' fees and expenses of the defendant. We affirm as to maintaining the status quo of the two school districts, finding that they remained unchanged by the annexation.
AFFIRMED IN PART AND REVERSED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON, SULLIVAN and ANDERSON JJ., concur.
PITTMAN, J., not participating.
NOTES
[1] Article 11 Municipal Separate School Districts, Miss. Code Ann. §§ 37-7-601 to 639 (1972). Article 13 Special Municipal Separate School Districts, §§ 37-7-701 to 745. Article 15 Line School Districts, §§ 37-7-801 to 811. Article 17 Isolated School Districts, §§ 37-7-901 to 911.
[2] The annexation was affirmed by this court in Western Line Consol. v. City of Greenville, 465 So.2d 1057 (Miss. 1985) and City of Greenville v. Farmers, Inc., 513 So.2d 932 (Miss. 1987).
[3] The language in Bassett v. Town of Taylorsville, 542 So.2d 918, 920 n. 3 (Miss. 1989), may be a bit loose, and, to the extent it is inconsistent with what we say here, that language should be deemed modified.
[4] Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c provides two methods by which a covered jurisdiction may preclear an enactment affecting voting. One is to obtain a declaratory judgment in the U.S. District Court for the District of Columbia, that the enactment does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color. The alternative is to submit the enactment or procedure to the Attorney General of the United States, who then has sixty (60) days in which to interpose an objection. Should the U.S. Attorney General fail to object, the jurisdiction is free to implement the enactment.
[5] The matter of preclearance of the "repeal" of Section 37-7-611 has been noted in Harrison County v. City of Gulfport, 557 So.2d 780, 788 (Miss. 1990) and In Re Enlargement of Corporate Boundaries of Booneville, Mississippi, 551 So.2d 890, 894-95 (Miss. 1989). Neither the July 22, 1986 submission, nor many other facts set forth above, were a part of the record before this Court in Harrison County or City of Booneville, nor were these matters otherwise brought to the attention of this Court until this case.
[6] U.S. DEPARTMENT OF JUSTICE
 Washington, D.C. 20530
 August 29, 1986
WBR;SSC;MSB;gmh
DJ XXX-XXX-X
P9110
P9535-9549
Honorable Edwin Lloyd Pittman
Attorney General
P.O. Box 220
Jackson, Mississippi XXXXX-XXXX
Dear Mr. Attorney General:

This refers to Chapter 492, S.B. No. 2117 (1986), which amends various provisions of the code affecting public schools in the State of Mississippi, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. We received your submission on July 23, 1986. In accordance with your request, expedited consideration has been given this submission pursuant to the Procedures for the Administration of Section 5 (28 C.F.R. 51.32).
The Attorney General does not interpose any objection to the voting changes occasioned by Senate Bill No. 2117 (1986), as identified in your July 22, 1986, letter. However, we feel a responsibility to point out that Section 5 of the Voting Rights Act expressly provides that the failure of the Attorney General to object does not bar any subsequent judicial action to enjoin the enforcement of such change. In addition, as authorized by Section 5, the Attorney General reserves the right to reexamine this submission if additional information that would otherwise require an objection comes to his attention during the remainder of the sixty-day review period. See also 28 C.F.R. 51.42 and 51.48.
We note that several of the provisions of Senate Bill No. 2117 (1986) authorize officials of the political subdivisions of the State to make changes affecting voting which are viewed as enabling legislation. Therefore, local officials are not relieved of their responsibility to seek preclearance, pursuant to the requirements of Section 5, of any changes affecting voting (e.g., changing voting precinct lines, polling places, special election dates and procedures, boundary changes, etc.) which are adopted as a result of the provisions of Senate Bill No. 2117. 28 C.F.R. 51.14.
 Sincerely,
 Wm. Bradford Reynolds
 Assistant Attorney General
 Civil Rights Division
 By: /S/ Sandra Coleman
 for Gerald W. Jones
 Chief, Voting Section

[7] Section 47 states: Sections 37-7-601, 37-7-603, 37-7-605, 37-7-609, 37-7-611, 37-7-613, 37-7-615, 37-7-617, 37-7-619, 37-7-621, 37-7-623, 37-7-625, 37-7-627, 37-7-629, 37-7-631, 37-7-633, 37-7-635, 37-7-637, 37-7-639, 37-7-641, 37-7-643 and 37-7-645, Mississippi Code of 1972, which provide for the creation and operation of municipal separate school districts, are hereby repealed.
[8] Although the action of Greenville School District in seeking declaratory relief was arguably premature due to the fact that preclearance of the annexation was not obtained until February 1990, the school district prudently sought this determination.