Johnny **DUPREE**, et al., **Plaintiffs,**

v.

Ray **MABUS**, Governor of Mississippi, et al., **Defendants,**

The **Lamar County Board of Education and Trustees, in their official capacities and Forrest County School District and the Members of the Board of Trustees in their official capacities, Defendants/Intervenors.**

Civ. A. No. H90–0043(W).

United States District Court, S.D. Mississippi, Hattiesburg Division.

April 1, 1991.

Holmes Adams, Lawrence Allison, Jr., Perry Sansing, Brunini Grantham Grower & Hewes, Jackson, Miss., for plaintiffs.

Robert Sanders, Giles Bryant, Office of the Atty. Gen., State of Miss., Jackson, Miss., for defendants.

Dennis Horn, Horn & Payne, Jackson, Miss., William E. Andrews, III, Purvis, Miss., S. Mark Wann, John L. Maxey, II, Jackson, Miss., for defendants/intervenors.

Before BARKSDALE, Circuit Judge, and TOM S. LEE and WINGATE, District Judges.

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284, this action under § 5 of the Voting Rights Act of 1965 is before this three-judge Court on motions for summary judgment pursuant to Fed.R.Civ.P. 56 by (1) the plaintiffs, members of the Board of Trustees of the Hattiesburg Public School District; (2) defendants, Ray Mabus and Mike Moore in their capacities as Governor and Attorney General of Mississippi, respectively, and the State of Mississippi; and (3) intervenor/defendant, the Forrest County School District and its Board of Trustees; and on the Rule 12(b) motion to dismiss by intervenor/defendant, the Lamar County Board of Education and its Trustees.[1]

### I.

Beginning in 1966, the City of Hattiesburg (City) began expanding, through annexations, into Forrest and Lamar Counties; and the citizens in these annexed areas vote in City municipal elections. However, the City's municipal school district boundaries have not expanded with the annexations.

State laws enacted, and in one instance repealed, since 1977 affect the composition of both municipal and county school districts and allow the annexed areas' voters not residing in the City school district to vote for the City's governing authorities, who in turn select the City school board. Accordingly, the plaintiffs allege that these changes constitute voting changes covered by § 5 of the Voting Rights Act of 1965 (Act), 42 U.S.C. § 1973c.

The plaintiffs, residents and registered voters in the City and Forrest County and duly appointed members of the Board of Trustees of the City school district, filed this action in February 1990, seeking, *inter alia*, to enjoin the State of Mississippi and state officials from enforcing three state statutes: (1) the 1977 amendment to Miss. Code Ann. § 21-1-59, Ch. 379, 1977 Miss. Laws 543; (2) the 1978 revision of the 1977 amendment to § 21-1-59, Ch. 312, 1978

---

1. The state defendants moved to dismiss for failure to state a claim upon which relief may be granted, Rule 12(b)(6), or alternatively for summary judgment. Rule 12(b) provides that if a 12(b)(6) motion is made and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Because we consider matters outside the pleadings, we treat the motions to dismiss as summary judgment motions.

Miss.Laws 418; and (3) the 1986 repealer of Miss.Code Ann. § 37–7–611, Uniform School Law, Ch. 492, § 47, 1986 Miss.Laws 687. The plaintiffs contend that these laws have not been precleared pursuant to § 5 of the Act and are therefore unenforceable.[2]

The Lamar and Forrest County Boards of Education and the members of their Boards of Trustees intervened as defendants. The Lamar County Board filed a counterclaim, alleging that the relief sought by the plaintiffs would violate a desegregation order under which the Lamar County School District operates, by radically altering the racial balance of that district in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment.

It is undisputed that § 52 of the Uniform School Law, § 37–7–103, was precleared. In effect, it is the successor to one of the three statutes in issue—§ 37–7–611. The Mississippi Supreme Court recently held in *Greenville Public School District, et al. v. Western Line Consolidated School District, et al.*, 575 So.2d 956 (1990), that the repeal of § 37–7–611 was precleared when the United States Attorney General (USAG) failed to interpose an objection to the entire 1986 Uniform School Law. That court also held that if not expressly precleared, § 37–7–611 was precleared implicitly by the express preclearance of § 37–7–103 of the Uniform School Law, because the two provisions are "clearly inconsistent." *Id.* at 14.

## II.

The Act provides that certain jurisdictions may not implement any "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964" without first obtaining approval from the United States District Court for the District of Columbia or, alternatively, from the USAG that the proposed change does not, or will not, have a discriminatory purpose or effect. 42 U.S.C. § 1973c.

Due to the expense and burden of instituting an action for declaratory judgment in the D.C. District Court, most covered jurisdictions opt for the USAG approval alternative. The Act and regulations implemented under it provide that once a proposed change has been submitted to the USAG, he has 60 days within which to object. The USAG may request additional information; and if an objection is interposed by the USAG, the submitting party may request reconsideration. 28 C.F.R. §§ 51.37; 51.45. Such a request triggers another 60 day period for the USAG to decide whether to continue or withdraw his objection. *Id.* at § 51.48. If the USAG fails to object within the prescribed time, the jurisdiction is free to implement the new enactment. But, even if the legislation is precleared by the USAG, nothing in the statute prevents a subsequent judicial challenge to that legislation.

We turn first to a discussion of the Mississippi statutes in issue: §§ 21–1–59 and 37–7–611 (repealed).

### A.

Prior to 1977, § 21–1–59 provided that "[n]o municipality shall be created or shall change its boundaries so as to include within the limits of such municipality any of the buildings or grounds of any state institution" unless consent was obtained from the governing body of the institution. In 1977, the section was amended to add the following:

Provided further, that any change in the boundaries of a presently existing municipality *which crosses county lines* shall not affect the public school district located in the annexed area unless and until consent thereto shall have first been obtained in writing from the Board of Trustees of the school district proposed to be partially or wholly included in the change of municipal boundaries.

---

**2.** Pursuant to its March 7, 1991, motion, the United States was granted leave to submit a brief as amicus curiae. The United States contends that § 5 applies and that the requisite preclearance has not been received.

Ch. 379, 1977 Miss.Laws 543 (emphasis added). This amendment was applicable to certain of the City's annexations; it created an exception to the above referenced § 37–7–611, further discussed below, which provided that such expansion automatically included the municipal school district incorporating the annexed area.

As discussed below, the 1977 amendment was not submitted for preclearance to the USAG until March 23, 1990, because the state defendants believed that the amendment was not subject to § 5, being of the view that it had the effect of preserving the status quo and was thus not a voting "change."

In 1978, § 21–1–59 was amended again. Ch. 312, 1978 Miss.Laws 418. The amendment made the statute applicable to future annexations into a neighboring county by adding the following italicized language:

Provided further that any changes in the boundaries of a presently existing municipality which *extends into or further extends into a county in which the municipality's principal office is located* shall not affect the public school district located in the annexed area, unless and until consent thereto shall have been first obtained....

(Emphasis added.) A referendum provision was also added for the Jones County–Laurel area concerning the acquisition of county school territory by the Laurel public schools.

The statute, as amended in 1978, was submitted for preclearance in April 1978. The submission did not mention the "extends into or further extends" language, referencing only the referendum. When the State responded to the USAG's request for additional information, again no mention was made of the "extends" language. In March 1981, the USAG interposed no objection.

The 1986 Uniform School Law did not change § 21–1–59. In May 1990, the USAG objected to the 1977 amendment submitted for preclearance, stating:

[W]e note that the state makes several claims about the preclearance status of the instant changes which appear to seri-

ously misconstrue the structure, purpose, and history of the preclearance requirement.... The state ... contends that a 1978 amendment which clarified the scope of the instant 1977 change was precleared when the state in 1981 received preclearance for a separate portion of the 1978 statute.

The USAG rejected this claim.

### B.

Prior to being repealed in 1986 by § 47 of the Uniform School Law, Ch. 492, 1986 Miss.Laws 687, the other statute in issue, § 37–7–611, enacted in 1926, stated in part:

Where the corporate limits of any municipality which constitutes a municipal separate school district, either with or without added territory, are extended so as to include the whole or any part of an existing adjacent school district in the county school system or municipal separate school district, then such adjacent school district, or such part thereof as is included within the corporate limits of the municipality by reason of the extension thereof, shall thereby automatically be merged with and become a part of such municipal separate school district.

Miss.Code Ann. § 37–7–611 (1972). As discussed above, § 21–1–59, as amended in 1977 and 1978, provided an exception to § 37–7–611, concerning how municipal school districts were affected by certain municipal expansions.

In 1986, the Mississippi Attorney General (MAG) submitted Senate Bill 2117, the Uniform School Law of 1986, for preclearance. The cover memorandum for the submission stated that the law was submitted "in its entirety" and provided:

The act accomplishes a reorganization and streamlining of laws which govern the operation, financing, and administration of the public schools in Mississippi. Senate Bill number 2117 is reform legislation supplemental to and a logical extension of the Education Reform Act of 1982.... *For the sake of brevity, the submission will only set forth the particular sections which deal primarily*

*with voting rights even though the complete act is submitted for review.*

(Emphasis added.) The memorandum explained 13 sections of the Uniform School Law and their effect on voting.

The repealer of § 37–7–611 was not discussed in this cover letter. However, accompanying the submission was a booklet comparing each section of Senate Bill 2117 with prior law, together with an underlined version of Senate Bill 2117, reflecting the new language as well as deletions of prior language. The booklet's introductory note provided:

> This booklet sets forth on a section by section basis each section of the current law which has been amended followed by each individual section of Senate Bill Number 2117, Laws of Mississippi, 1986 Regular Session. Where the sections of Senate Bill Number 2117 are new law then only those particular sections will be denoted with no comparison of current law. This section by section comparison provides explanatory materials adequate to disclose the difference between the prior and the proposed law. Each section of Senate Bill Number 2117 which is the version of the bill as sent to the governor is marked to show the changes made in the current law. Underlining indicates language added and a check mark indicates language deleted. By comparing each section of Senate Bill Number 2117 and the current practice, the changes to current law are easily identified.

The above referenced section 47 of the Uniform School Law provided for the repeal of 23 sections, including § 37–7–611. The booklet stated that these 23 sections "which provide for the creation and operation of municipal separate school districts, are hereby repealed."

Section 52 of the Uniform School Law amended § 37–7–103. This provision was specifically discussed in both the cover memorandum accompanying the submission and the booklet. The cover memorandum provided:

> Section 52 amends Section 37–7–103 ... [and] sets forth that ... the school board

of any school district may abolish such existing district or reorganize, change or alter the boundaries of any such district. Additionally, the school board with the consent of the school board of the district involved may add to such school district any part of the school district adjoining same or may detach territory from such school district and annex the same to an adjoining district. The present law enables the county board of education to create, alter or abolish any school districts of such county, other than the municipal separate school districts. In addition, the county board of education with the consent of the board of trustees of the municipal separate school district involved may add to such municipal separate school districts any part of the county adjoining same or may detach territory from such municipal separate school district and annex same to an adjoining district in the county school system.

On August 29, 1986, the USAG advised the MAG that he did "not interpose any objection to the voting changes occasioned by Senate Bill No. 2117 (1986), *as identified in your July 22, 1986, letter.*" (Emphasis added.) The letter concluded:

> We note that several of the provisions of Senate Bill No. 2117 (1986) authorize officials of the political subdivisions of the State to make changes affecting voting which are viewed as enabling legislation. Therefore, local officials are not relieved of their responsibility to seek preclearance, pursuant to the requirements of section 5, of any changes affecting voting (*e.g.*, changing voting precinct lines, polling places, special election dates and procedures, boundary changes, etc.) which are adopted as a result of the provisions of Senate Bill No. 2117. 28 C.F.R. 51.14.

The State concedes that the USAG's letter raised doubt about whether the preclearance included provisions other than those 13 specifically listed in its cover memorandum. Therefore, in December 1987, the MAG sought an affirmative preclearance of § 47 insofar as it repealed Miss. Code Ann. § 37–7–611. In the State's re-

submission, it reserved the right to object to § 47 being subject to preclearance. The memorandum accompanying the resubmission further stated:

> It is the automatic expansion of the school district which has been repealed by the instant submission. The option to expand however, is not foreclosed. Section 52, of the Chapter 492 of the 1986 Laws of Mississippi (precleared by the United States Justice Department on August 29, 1986) provides that the school board of any school district may abolish such existing district or reorganize, change or alter the boundaries of any such school district.

On February 29, 1988, the USAG requested additional information concerning the repeal of § 37–7–611. The State responded; and on March 31, 1989, the USAG objected to the implementation of § 47 of the Uniform School Law insofar as it repealed § 37–7–611. The State requested reconsideration; and by letter dated May 25, 1990, the USAG declined to withdraw his original objection, stating in part:

> It is well-established that to trigger Section 5 review a covered jurisdiction must submit a voting change to the Attorney General in an "unambiguous and recordable manner." ... [T]he prior submission of the Uniform School Law ... identified specific voting changes adopted by those statutes, but ... [the] submission contained [no] reference to the voting changes which the state now claims were precleared. Section 5, as interpreted by the courts and our submission guidelines, plainly fixes the responsibility for identifying voting changes on the state, not the United States Attorney General, yet the state appears to be arguing ... that the Attorney General should have uncovered voting changes of which the state itself seemingly was unaware at the time the prior submissions were made.

## III.

Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The language of Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## A.

■ The intervenors and defendants raise several issues which must be addressed before consideration of the § 5 issues.

## 1.

The defendants and Lamar County assert that no relief can be granted against the Governor or the MAG because they have no duty to administer laws concerning alteration or definition of school district boundaries. Section 5 provides that state enactments may not be enforced unless they have "been submitted by the *chief legal officer* or other appropriate official of such State or subdivision to the [United States] Attorney General...." 42 U.S.C. § 1973c (emphasis added).

The primary issues in this case are whether the statutes are covered by § 5 and, if so, whether they have been precleared. In Mississippi, the attorney general is "the chief legal officer and advisor for the state." Miss.Code Ann. § 7–5–1 (1972). The Attorney General is a proper party to this action. The Governor, however, is not responsible for preclearance. The Act uses the phrase chief legal officer or other appropriate state official. Because the MAG is the chief legal officer, no other state official is required to act. The Governor has no statutorily imposed responsibility to ensure that statutes are precleared.[3] Ac-

---

**3.** Moreover, the Lamar and Forrest County Boards and Trustees have intervened in the suit.

cordingly, he will be dismissed from this action.

2.

■ The intervenors contend that the plaintiffs lack standing to pursue their claim, because the statutes do not result in a change in voting affecting the Board of Trustees of the City school district. Whether plaintiffs have standing is directly related to whether these statutes are § 5 changes in voting; and as discussed *infra*, they are. To have standing, the plaintiffs must have a "distinct and palpable injury" and a "fairly traceable" causal connection between the claimed injury and the challenged conduct of the defendant. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) and *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *see also Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978). The Act extends to States and the subdivisions thereof. "It is consistent with the broad purpose of the Act to allow the individual citizen standing to insure that his city or county government complies with the § 5 approval requirements." *Allen v. State Bd. of Elections*, 393 U.S. 544, 557, 89 S.Ct. 817, 827, 22 L.Ed.2d 1 (1969). In *Allen*, the Court further stated:

> [T]he major purpose of the Act indicates that appellants may seek a declaratory judgment that a new state enactment is governed by § 5. Further, after proving that the State has failed to submit the covered enactment for § 5 approval, the private party has standing to obtain an injunction against further enforcement, pending the State's submission of the legislation pursuant to § 5.

*Id.* 393 U.S. at 555, 89 S.Ct. at 826.

The plaintiffs are residents and registered voters in the City and are members of the Board of Trustees of the City school district. They allege that if the statutes

To the extent administration or enforcement of the statutes in issue were required, such relief could be directed to these parties.

continue to be enforced, voters in the annexed territory who are not residents of the City school district will elect the City mayor and council members who, in turn, will select the trustees of the City school board. The plaintiffs allege a distinct injury under the Act which is directly traceable to the defendants' alleged failure to comply with the requirements of § 5. As noted by the Court in *Allen*, § 5 "might well prove an empty promise unless the private citizen were allowed to seek judicial enforcement of the prohibition." *Id.* at 557, 89 S.Ct. at 827. The plaintiffs have standing.

3.

■ The state defendants contend that the action is barred by the Eleventh Amendment, asserting that only the USAG may sue a State pursuant to the Act. This argument is without merit. The Supreme Court in *Allen*, discussed *supra*, held that private citizens may bring an action under § 5.

Lamar County argues that the action is barred by the Eleventh Amendment, pursuant to *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). But *Pennhurst* concerned the failure of state officials to carry out their duties under *state, not federal,* law; the plaintiffs' claim concerns failure to adhere to federal law. Furthermore, as is more than clearly established, Eleventh Amendment immunity does not bar actions for injunctive relief against state officials on the basis of federal law under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

4.

■ The intervenors also contend that the case is not ripe for decision, because a 1966 City annexation into Lamar County was never precleared by the USAG.[4] (The other annexations were precleared.) The 1966 annexation was the basis for all subsequent annexations, because they are contiguous to that annexation. Under Missis-

4. The Lamar County intervenors stated that they were contemplating an amendment to their Answer for leave to file a third party complaint against the City challenging the validity of the 1966 annexation. They have not done so.

sippi law, annexations must be "adjacent" to the municipality. Miss.Code Ann. § 21–1–27 (1972).

The status of the 1966 annexation does not affect our jurisdiction to consider whether the statutes in issue are covered by the Act and, if so, whether they have been precleared. The "basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The statutes in issue have been passed by the Mississippi Legislature and are being enforced. The case is ripe for decision.

5.

■ We must also consider what effect, if any, to give the Mississippi Supreme Court's thorough and well reasoned decision in *Greenville Public School District.* We agree with the Mississippi Supreme Court that it has concurrent jurisdiction to adjudicate certain § 5 issues. *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990). State courts have jurisdiction to hear federal claims unless divested "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id.* 110 S.Ct. at 795 (quoting *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981)). In *Hathorn v. Lovorn*, 457 U.S. 255, 269, 102 S.Ct. 2421, 2430, 72 L.Ed.2d 824 (1982), the Supreme Court held "that the Mississippi courts had the power to decide whether § 5 applied to the change...."

> Congress prohibited ... jurisdictions from implementing any change in voting procedure without obtaining preclearance under § 5. Granting state courts the power to decide, as a collateral matter, whether § 5 applies to contemplated changes in election procedures will help insure compliance with the preclearance scheme.

*Id.* at 268, 102 S.Ct. at 2429.

■ However, the effect federal courts give to state court determinations of federal claims is a separate inquiry from that of concurrent jurisdiction. In short, federal courts are not bound by state court decisions on matters of federal law. *See, e.g., Standard Oil Co. v. Johnson*, 316 U.S. 481, 483, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611 (1942); *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 470–71, 62 S.Ct. 676, 685–86, 86 L.Ed. 956 (1942) (Jackson, J., concurring). Therefore, the state court's interpretation of the § 5 preclearance issues is not binding on this court. Furthermore, the doctrines of res judicata and collateral estoppel are inapplicable, because the plaintiffs and the defendants were not parties to the state court action. *See Hathorn v. Lovorn*, 457 U.S. at 268 n. 23, 102 S.Ct. at 2430 n. 23 ("Common notions of collateral estoppel suggest that the state proceedings ... would not bind other interested persons who did not participate in them.... Persons dissatisfied with a state court's collateral resolution of a § 5 issue in proceedings involving other parties, therefore, are likely to be able to litigate the issue anew in federal court."). Moreover, § 21–1–59 was not in issue in *Greenville Public School District.*

■ Conversely, a state supreme court's interpretation of a state statute is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84, 104 S.Ct. 378, 382 (1983) ("the views of the State's highest court with respect to state law are binding on the federal courts"); *Brown v. Ohio*, 432 U.S. 161, 167, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) ("Ohio courts 'have the final authority to interpret ... that State's legislation.'") (quotation omitted). Accordingly, the Mississippi Supreme Court's interpretation of the Uniform School Law is binding on this court.

B.

The primary issues involved in this case have been summarized by the Supreme Court as follows:

> The only questions in an action alleging a violation of the § 5 preclearance requirement are (1) whether a change is covered by § 5, (2) if the change is covered,

whether § 5's approval requirements have been satisfied, and (3) if the requirements have not been satisfied, what relief is appropriate.

*McCain v. Lybrand*, 465 U.S. 236, 250 n. 17, 104 S.Ct. 1037, 1046 n. 17, 79 L.Ed.2d 271 (1984). Whether the amendments and repealer "had a discriminatory purpose or effect is not an issue at this stage of the § 5 litigation: that question must be initially decided by the District Court for the District of Columbia or the Attorney General." *Id.*

### 1.

First, we must address plaintiffs' contention that the USAG's determinations that the statutes are covered by § 5 and have not been precleared are not subject to review by this court. The Supreme Court has held that only the USAG's "exercise of discretion ... or his failure to object within the statutory period" is unreviewable. *Morris v. Gressette*, 432 U.S. 491, 500–07, 97 S.Ct. 2411, 2418–22, 53 L.Ed.2d 506 (1977). In *Morris*, the Court invalidated an untimely *nunc pro tunc* objection by the USAG to a South Carolina reapportionment plan. The USAG had failed to enter a timely objection to the submission. "[C]ompliance with § 5 is measured solely by the *absence*, for whatever reason of a timely objection on the part of the Attorney General." *Id.* at 502, 97 S.Ct. at 2419 (emphasis in original). Although the USAG's decision not to object is not reviewable, this does not preclude a consideration of whether the statutes in issue are covered by § 5 and were precleared, especially where, as here, there was arguable preclearance of the entire Uniform School Law on the first submission (1986).

### 2.

Whether these statutes are covered by § 5 is a legal question and therefore appropriate for summary judgment. The scope of § 5 is broad. It is intended to reach "any state enactment which altered the election law of a covered State in even a minor way." *Allen*, 393 U.S. at 566, 89 S.Ct. at 832. There are no statutory exceptions to § 5, "thus indicating an intention that all changes, no matter how small, be subjected to § 5 scrutiny." *Perkins v. Matthews*, 400 U.S. 379, 387, 91 S.Ct. 431, 436, 27 L.Ed.2d 476 (1971) (quoting *Allen*, 393 U.S. at 568, 89 S.Ct. at 833). The regulations in effect in 1986 when the Uniform School Law was submitted for preclearance provided:

> Any change affecting voting, even though it appears to be minor or indirect, returns to a prior practice or procedure, ostensibly expands voting rights, or is designed to remove the elements that caused the objection by the Attorney General to a prior submitted change, must meet the Section 5 preclearance requirement.

28 C.F.R. § 51.11 (1986) (currently codified at 28 C.F.R. § 51.12 (1990)).

The statutes in issue, at the very least, indirectly affect political subdivision boundaries. The regulations list examples of changes affecting voting; one is "[a]ny change in the constituency of an official or the boundaries of a voting unit (e.g., through redistricting, annexation, deannexation, incorporation, reapportionment ...)." 28 C.F.R. § 51.12 (1986) (currently codified at 28 C.F.R. § 51.13 (1990)). The trustees of a municipal separate school district in general are elected "by a majority of the governing authorities of the municipality...." Miss.Code Ann. § 37–7–203 (1972); Hattiesburg Code of Ordinances, Art. XXII, School Board (1989). The governing authorities of the City, the mayor and council, are "elected from the municipality at large in accordance with the general laws for the holding of municipal elections." Hattiesburg Code of Ordinances, Art. I, §§ 2–2 and 2–4 (1989). Those residing in the annexed areas may vote in municipal elections if a proper ordinance is adopted by the council. Miss.Code Ann. § 21–8–7(4)(d) (1972).

Prior to the 1977 and 1978 amendments to § 21–1–59 and the 1986 repeal of § 37–7–611, municipal school district lines expanded to the same extent as the municipal annexations; now, under § 37–7–103, and the amendments to § 21–1–59, this result is not automatic. Here, the result is that

citizens who reside in the Lamar and Forrest County annexations may still be in the county school districts. These citizens continue to vote for the Lamar and Forrest County Boards of Education; but they also vote for the City mayor and council, who in turn select the City board of trustees of the City school district. Therefore, at least an indirect change in voting has occurred.

Furthermore, it is significant that the USAG, who has considerable expertise in this area, considered these statutes to be "changes" within the meaning of § 5. In his March 31, 1989 objection to the repeal of § 37–7–611, he stated:

> [T]he repeal of Section 37–7–611, by allowing for annexations to cities without the concomitant expansion of municipal school district boundaries, is likely to create a class of city voters (for the most part predominantly white) who will not reside in the city school system yet may vote for the city governing body, which under Mississippi law, appoints the city school board.

And, in that same letter, he also found that the 1977 amendment to § 21–1–59 "occasioned a similar change concerning the modification of municipal school district boundaries where a municipality annexes territory outside its principal county." *See Dougherty County, Ga. Bd. of Educ. v. White*, 439 U.S. 32, 39, 99 S.Ct. 368, 372–73, 58 L.Ed.2d 269 (1978) ("Given the central role of the Attorney General in formulating and implementing § 5, [his] interpretation of its scope is entitled to particular deference."); *Lucas v. Townsend*, 698 F.Supp. 909, 911 (M.D.Ga.1988) ("Though not binding upon this ... court, the Attorney General's interpretation of both the scope of Section 5 and his regulations promulgated thereunder is entitled to particular deference.").

Accordingly, we hold that the statutes do fall within the broad sweep of § 5. The vote from the annexed area could have an impact on the selection of the City school board. The vote of the City voters who

reside in the municipal school district would be diluted by the vote of those residents in the annexed area who remain a part of the county school district. This constitutes the requisite change in voting.

3.

 We next determine whether these statutes have been precleared. As stated, in 1986 the Uniform School Law was submitted to the USAG "in its entirety" and no objection was interposed within the statutory 60 day period. The regulations then in effect did not require jurisdictions to submit a copy of the prior law being amended or repealed. 28 C.F.R. § 51.25 (1986).[5]

The regulations in effect in 1986 did require the submitting authority to include "a clear explanation of the change explaining the difference between the submitted change and the prior law or practice" if the change affecting voting was not readily apparent on the face of the document. 28 C.F.R. § 51.25(b) (1986). Those regulations also imposed a duty on the USAG to request additional information if the submission was incomplete:

> If a submission does not satisfy the requirements of § 51.25, the Attorney General shall request further information as is necessary from the submitting authority....

28 C.F.R. § 51.35 (1986). The USAG did not make such a request.

As discussed *supra*, the State explained that the Uniform School Bill was submitted in its entirety and was a reorganization and streamlining of the Mississippi school system. The plaintiffs contend that only those provisions which were specifically identified in the cover memorandum were precleared, asserting that the USAG's August 1986, letter which states that there was no objection to the voting changes "as identified in your July 22, 1986 letter" indicates that the USAG precleared only those particular sections. Moreover, the subsequent May 1990 USAG letter stated:

---

**5.** The current regulation requires "[a] copy of any ordinance, enactment, order, or regulation embodying the voting practice that is proposed

to be repealed, amended, or otherwise changed." 28 C.F.R. § 51.27 (1990).

It is well-established that to trigger § 5 review a covered jurisdiction must submit a voting change to the Attorney General in a "unambiguous and recordable manner." ... [T]he prior submission of the Uniform School Law ... identified specific voting changes adopted ... but ... [the] submission contained [no] reference to the voting changes which the state now claims were precleared.

The letter further stated that the responsibility is on the submitting jurisdiction to identify voting changes, and that the USAG should not be required to uncover "voting changes of which the state itself seemingly was unaware at the time the prior submissions were made."

The plaintiffs also charge the state defendants with being inconsistent, because their statement that they submitted the entire bill for preclearance is in contradiction to the December 30, 1987 letter of resubmission, in which the MAG stated that "[t]he *major part* of Chapter 492, as it deals with the Voting Rights Act of 1965 ... has already been precleared" by the Justice Department on August 29, 1986. (Emphasis added.)

The defendants and intervenors respond that the bill was submitted in its entirety, and furthermore, that the booklet accompanying the submission explained that § 47 repealed those sections (including 37–7–611) governing the creation and operation of municipal school districts. They maintain that the entire bill was precleared by the USAG's failure to object, and that subsequent objection in 1989 and 1990 was of no effect.

In *Morris,* the Court held that the USAG's belated attempt to object to South Carolina's reapportionment plan was invalid:

> According to the terms of § 5, a covered jurisdiction is in compliance pursuant to the latter alternative [USAG method] once it has (i) filed a complete submission with the Attorney General, and (ii) received no objection from that office within 60 days.... [C]ompliance with § 5 is measured solely by the *absence,* for

whatever reason of a timely objection on the part of the Attorney General.

432 U.S. at 502, 97 S.Ct. at 2419 (emphasis in original). The Court further stated that

> [i]n light of the potential severity of the § 5 remedy, the statutory language, and the legislative history, we think it clear that Congress intended to provide covered jurisdictions with an expeditious alternative to declaratory judgment actions.... The extraordinary remedy of postponing the implementation of validly enacted state legislation was to come to an end when the Attorney General failed to interpose a timely objection based on a complete submission.

*Id.* at 504, 97 S.Ct. at 2420. And, the Court noted that the USAG's failure to act would not preclude a subsequent action to enjoin enforcement of the legislation.

▮ *Morris* stands for the proposition that the USAG's failure to object to a complete submission is final, and any subsequent attempts to object are invalid. Needless to say, the question remaining after *Morris* is what constitutes a "complete submission." In *Allen,* which preceded *Morris,* none of the voting changes were formally submitted to the USAG; but the appellees contended that the USAG was aware of the changes when served with a copy of appellees' briefs in the four consolidated cases. The Supreme Court rejected this argument and held:

> While the Attorney General has not required any formal procedure, we do not think the Act contemplates that a "submission" occurs when the Attorney General merely becomes aware of the legislation, no matter in what manner.... A fair interpretation of the Act requires that the State in some unambiguous and recordable manner submit any legislation or regulation in question directly to the Attorney General with a request for his consideration pursuant to the Act.

393 U.S. at 571, 89 S.Ct. at 834.

In *United States v. Board of Comm'rs of Sheffield, Ala.,* 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978), the city submitted a letter which "sought approval only for the holding of a referendum," but did

not ask for preclearance of the underlying change that was the subject of the referendum. When the USAG responded, he stated that he interposed no objection to the holding of a referendum. The Supreme Court held that the district court erred in concluding that the USAG approved the underlying change as well. "[T]he purposes of the Act would plainly be subverted if the Attorney General could ever be deemed to have approved a voting change when the proposal was neither properly submitted nor in fact evaluated by him." *Id.* at 136, 98 S.Ct. at 981.

*McCain v. Lybrand,* 465 U.S. 236, 104 S.Ct. 1037 (1984), concerned a 1966 bill that had never been submitted for preclearance, although a 1971 amendment to the 1966 bill had been precleared. The district court held that (1) the USAG's request for additional information, including a copy of the 1966 statute, indicated that he had considered all aspects of the electoral scheme, including the changes effected in the 1966 Act; or (2) alternatively, that because the 1971 submission retained the changes effected by the 1966 Act, the lack of objection to the 1971 submission necessarily constituted approval of those changes as well and rendered moot the failure to preclear the 1966 Act. The Supreme Court disagreed:

> To the extent there was any ambiguity in the scope of the preclearance request, the structure and purpose of the preclearance requirement plainly counsel against resolving such ambiguities in favor of the submitting jurisdiction in the circumstances of this case. The preclearance process is by design a stringent one; it is predicated on the congressional finding that there is a risk that covered jurisdictions may attempt to circumvent the

protections afforded by the Act; the burden of proof ... is placed upon the covered jurisdiction....

*Id.* at 257, 104 S.Ct. at 1050.

*Allen, Sheffield,* and *McCain,* however, are factually distinguishable from this case. The MAG unambiguously submitted the Uniform School Law "in its entirety." The USAG was advised that only particular sections which dealt "primarily" with voting rights were discussed, "even though the complete act is submitted for review." The memorandum explained the comprehensive nature of the submission; and, most importantly, the booklet explained the repeal of § 37-7-611 governing the creation and operation of municipal school districts.

Of even greater significance is both the discussion of § 52 in the cover memorandum and booklet and the undisputed preclearance of that section. Section 52, § 37-7-103, was in effect a replacement for the school districting procedures. Prior to the Uniform School Law, the provisions pertaining to school district boundaries and alterations varied, depending on whether the district was a county, municipal or consolidated school district. The 1986 Uniform School Law created uniformity among the school districts.[6] Section 52 amended § 37-7-103 (which had concerned changes to school districts by a county board of education) by granting jurisdiction to the school board of *any* school district to alter the boundaries of *any* such district by obtaining the consent of the adjoining school district involved; and the school board was authorized "to detach or add to such school district any part of the school district adjoining same, and ... may detach territory from such school district and annex same to an adjoining district." All references to

---

**6.** Section 37-6-3 was added by § 2 of the Uniform School Law. It provides in part:
(1) From and after July 1, 1987, all school districts in the State of Mississippi shall have the same prerogatives, powers, duties and privileges as provided in this chapter.
(2) As used in this act, the term "school board" shall mean (a) the county board of education of any countywide school district in this state; and (b) the board of trustees of any municipal separate, special municipal separate, consolidated or line consolidated school district in this state.

Section 37-6-5 was added by § 3:
Each school district in the state shall be a political subdivision with the name of the district being "_____ School District."

Section 37-6-7 was added by § 4:
Each school district shall be governed by a school board consisting of five (5) members, selected in the manner provided by law.

a county board of education and its authority to alter districts in the county were deleted; all references to a municipal school district and its required consent were deleted.

This view is in accord with the Mississippi Supreme Court's analysis of § 37–7–103:

> Miss.Code Ann. § 37–7–103 ... was enacted to control the abolition, alteration or creation of school districts after the reform. This statute gives the school board of any school district full jurisdiction, power and authority to alter the boundaries of any school district and requires the mutual consent of adjoining districts in the alteration of abutting boundaries. *All conflicting statutes concerning school boundaries were repealed, including § 37–7–611.*

*Greenville Public School District,* 575 So.2d 956 at 958 (1990) (emphasis added).

This case is factually similar to *Woods v. Hamilton,* 473 F.Supp. 641 (D.S.C.1979) (three-judge court). In *Woods,* South Carolina submitted the 1975 Home Rule Act for § 5 approval. The cover letter which accompanied the submission stated in full:

> For your consideration under the Voting Rights Act submitted herewith are certified copies of the following Act enacted by the General Assembly and approved by the Governor.
>
> Ratification Number Date Approved
>
> R. 396 June 25, 1978
>
> We would request expeditious consideration of this Act. If additional information is needed, please contact me.

*Id.* at 644. The court stated that "[i]t is apparent from the above letter that the State submitted the *entire* Home Rule Act to the [USAG] for his consideration within the sixty-day statutory period." *Id.* (Emphasis in original.) The USAG responded and (1) did not expressly object to a referendum provision; (2) reserved the right to object to the implementation of the selected form of government pursuant to the referendum; and (3) was silent on a transfer of powers provision. The court held that

*Morris* compelled a finding that the USAG had precleared the complete submission:

> Here, the Attorney General's silence on the transfer of powers in the Home Rule Act clearly dooms his belated attempt to label the assumption of such powers by the county council as an "uncleared change." Whatever may have been the motive of the Attorney General in failing to object to the transfer of powers in his ... letter, the fact remains that the State submitted the entire Home Rule Act and, under the law, the Attorney General ... was required to pass on all components of a complete submission at that time.

*Id.* at 646.

We find that there are no genuine issues of material fact concerning the preclearance, *vel non,* of the entire Uniform School Law of 1986 and hold that it was precleared in its entirety, including the repeal of § 37–7–611. A uniform act was submitted; by its title alone, the act signalled a massive reorganization of various laws. The submission was complete and unambiguous. And, under *Morris,* the USAG's later objection was of no effect.[7] Accordingly, the defendants and intervenors are entitled to summary judgment on plaintiffs' claim that the repeal of § 37–7–611 is not enforceable.

██ Likewise, as for § 21–1–59, there are no genuine issues of material fact concerning the preclearance, *vel non,* of the 1977 amendment. The 1977 amendment has not been precleared. The amendment was not submitted until March 23, 1990; and the USAG interposed an objection. The defendants' argument that the approval of the 1978 amendment cured the failure to submit the 1977 amendment for preclearance is without merit. This argument has been specifically rejected by Supreme Court decisions in *McCain* and *Sheffield,* discussed *supra.*

The only provision of the 1978 amendment to § 21–1–59 which was precleared was the referendum provision and not the "extends into or further extends" language now in issue. The MAG's December 30, 1980, cover letter stated that "[f]rom the

---

7. Because we find that the submission was complete, we need not decide whether § 37–7–611 was precleared by implication, due to the undisputed preclearance of § 37–7–103.

**304**

wording of the language as amended it appears that this amendment would apply only to Jones County." This language pertains to the referendum provision. The Attorney General's March 1981 response is clear:

> This is in reference to House Bill No. 1092 ... which provides for a referendum for municipalities in certain counties to determine whether a municipal expansion shall affect the public school system in the annexed area.... The Attorney General does not interpose any objection to the change in question.

The USAG response is limited to the referendum issue and that is the only provision which was precleared.

We hold, therefore, that the 1977 and 1978 amendments in issue to § 21–1–59 have not been precleared. Accordingly, these amendments are unenforceable. Therefore, the plaintiffs are entitled to summary judgment on their claim that the 1977 and 1978 amendments in issue to § 21–1–59 are not enforceable.[8]

THEREFORE, IT IS ORDERED:

1. Ray Mabus, the Governor of Mississippi, is dismissed from this action;

2. Summary Judgment is awarded plaintiffs on their claim that the 1977 and 1978 amendments in issue to § 21–1–59 are not enforceable; and

3. Summary judgment is awarded the defendants and intervenors on plaintiffs' claim that the repeal of § 37–7–611 is not enforceable.

Final Judgment will be entered.

SO ORDERED.

---

[8] The practical effect of this holding is another matter. The amendments to § 21–1–59 provided that the school district in the annexed area will not be affected without consent from the county school board; the amendments to § 21–1–59 were an exception to the automatic extension provision of § 37–7–611. Section 37–1–103, which has been precleared, provides for the same procedure as the 1977 and 1978 amendments to § 21–1–59; and § 37–7–611's repeal has been precleared.

Furthermore, the intervenors contend that we must consider the racial impact and the potential for interference with existing desegregation orders of any relief we grant under § 5. Even if it were proper for us to consider such issues in a preclearance case, § 37–7–103, precleared in 1986, provides for the same result as the amendments in issue to § 21–1–59 which have not been precleared.