Johnny DUPREE, Charlotte Tullos, Kathryn Jones & Jeff Bowman, Plaintiffs,

v.

Mike MOORE, Attorney General of Mississippi, in his official capacity, and the State of Mississippi, Defendants,

and

The Lamar County Board of Education and Trustees, in their official capacities, Defendants/Intervenors,

and

Forrest County School District and the Members of the Board of Trustees in their official capacities, Defendants/Intervenors.

Civ. A. No. H90–0043(W).

United States District Court, S.D. Mississippi, Hattiesburg Division.

Aug. 27, 1993.

J. Perry Sansing, W. David Watkins, Lawrence E. Allison, Jr., Holmes S. Adams, Jackson, MS, for plaintiffs.

Giles W. Bryant, Robert E. Sanders, Mississippi Atty. General's Office, Jackson, MS, for defendants.

James H.C. Thomas, Jr., Hattiesburg, MS, John L. Maxey, II, Steven Mark Wann, Jackson, MS, William E. Andrews, III, Purvis, MS, Dennis L. Horn, Jackson, MS, for intervenors-defendants.

Before BARKSDALE, Circuit Judge, and LEE and WINGATE, District Judges.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE and WINGATE, District Judges.

Back before this three-judge court pursuant to a remand by the United States Su-

preme Court, this lawsuit highlights the question under *Clark v. Roemer*, 500 U.S. ——, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991), and under § 5 of the Voting Rights Act of 1965, Title 42 U.S.C. § 1973c, whether the State of Mississippi properly submitted the statutory repealer of § 37–7–611, Miss.Code Ann. (1971), to the United States Attorney General for preclearance. On an earlier day, this three-judge court which was convened under the aegis of § 5 of the Voting Rights Act of 1965, Title 42 U.S.C. § 1973c, and Title 28 U.S.C. § 2284 held that the repealer had been precleared since Mississippi had submitted to the United States Attorney General its comprehensive Uniform School Law, S.B. No. 2117, ch. 492, of which the repealer of § 37–7–611 was a part, and since thereafter the United States Attorney General had failed to register any objection within the requisite time period. After our holding was appealed to the United States Supreme Court, that august Court directed us to take a fresh look at the controversy *sub judice* under the juridical illumination cast by *Clark v. Roemer* which was decided after we had rendered our earlier holding. Having taken that fresh look, a majority of this panel now holds that when Mississippi submitted its comprehensive Uniform School Law, of which the repealer of § 37–7–611 was a part, Mississippi failed to abide by the *Clark v. Roemer* standard and identify with specificity the anticipated voting changes to be wrought by the enactment of the repealer to § 37–7–611. Accordingly, we find the repealer of § 37–7–611 to be ineffective and unenforceable unless and until the United States Attorney General preclears the repealer, or withdraws the objection, or unless and until the State of Mississippi obtains a declaratory judgment from the United States District Court for the District of Columbia that the repealer does not have the purpose and will not have the effect of denying or abridging the plaintiffs' right to vote.

## BACKGROUND

The plaintiffs, Johnny Dupree, et al., black residents and registered voters of Hattiesburg, Mississippi, and members of the Board of Trustees of the Hattiesburg School District brought this action pursuant to § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, contending that legislative action taken by the State of Mississippi, a covered jurisdiction under the Voting Rights Act, changed, modified or eliminated certain voting standards, practices and procedures in effect in Mississippi as of November 1, 1964. The plaintiffs' complaint, filed February 23, 1990, focused upon three then-recently enacted amendments to state law regulating municipal territorial annexations. The three targeted statutes at the bull's eye of plaintiffs' complaint were the following:

(1) The 1977 Amendment to Miss.Code Ann. § 21–1–59 which provides that the annexation of a municipality across a county line will not affect the school district in the annexed area unless such school district consents for the annexed territory to be included in the municipal school district of the annexing municipality;

(2) The 1978 revision of the 1977 Amendment to Miss.Code Ann. § 21–1–59 which covers situations where a municipality annexes farther into a county other than its own and provides for referenda in specific situations; and

(3) The 1986 repealer of Miss.Code Ann. § 37–7–611. As part of the Mississippi Uniform School Law of 1986, this repealer provides that once annexed by a municipality, the annexed area will no longer be automatically merged with the municipal school district of the annexing municipality.

Plaintiffs correctly point out that these legislative actions promised to determine the boundaries of municipal and county school districts and the composition of the electorate for those districts.

Then, as to how the repealer of § 37–7–611 might specifically affect plaintiffs, plaintiffs showed that following its enactment, their City of Hattiesburg, situated in Forrest County, annexed other portions of Forrest County and portions of adjoining Lamar County. Plaintiffs predict that should the repealer go into effect the composition of the municipal electorate in the City of Hattiesburg, Mississippi, will be enlarged and changed by the inclusion of the annexed resi-

dents. But, while the annexed residents will be entitled to vote for Hattiesburg City Aldermen who appoint the members of the Hattiesburg Municipal School Board of Trustees, plaintiffs note that under the new statutes these annexed residents will not be merged automatically with the Hattiesburg School District as they would have been under the old law. Instead, as correctly observed by plaintiffs, under the repealer, these residents cannot be merged with the Hattiesburg Municipal School District unless the annexed residents give their consent. Plaintiffs then opine that the Lamar County residents will bring into the City of Hattiesburg a largely white electorate which will significantly impact upon voting for City Aldermen and, indirectly, the appointment of Hattiesburg Municipal School Board members, even though the Lamar County residents may decide not to become a part of the Hattiesburg Municipal School District. Thus, aggrieved over this anomaly and convinced that these enactments fall within the embrace of § 5 since the enactments promise to impact upon voting, plaintiffs asked this court to enjoin § 37–7–611, as well as the 1977 and 1978 amendments to § 21–1–59 because they had not been precleared. *See NAACP v. Hampton County Election Commission,* 470 U.S. 166, 175, 105 S.Ct. 1128, 1133, 84 L.Ed.2d 124 (1985), n. 19.[1] *See also* 28 C.F.R. § 51.13(d) & (e), [[a]ny change in the boundaries of voting precincts ..., and [a]ny change in the constituency of an official or the boundaries of a voting unit ... requires preclearance].

The defendants here are the State of Mississippi and its Attorney General. The two affected school districts (Lamar and Forrest Counties) and their trustees later intervened.

In response to the plaintiffs' complaint, the defendants asserted that the Mississippi legislative actions in issue already had been properly and unambiguously submitted to the United States Attorney General. Further, said defendants, since the Attorney General had not interposed an objection, the legislative actions in question had been precleared in accordance with § 5 of the Voting Rights Act.

In April of 1991, this panel held that the repealer of § 37–7–611, as well as the 1977 and 1978 amendments to Miss.Code Ann. § 21–1–59 constituted changes in voting practices and procedures sufficient to require preclearance under § 5 of the Act. The panel also found that the 1977 and 1978 amendments to § 21–1–59 were changes which had not been submitted for preclearance. Hence, the panel declared them to be unenforceable. *Dupree v. Mabus,* 776 F.Supp. 290 (S.D.Miss. 1991) (*Dupree I*).

However, the panel found that the repealer of Miss.Code Ann. § 37–7–611 had been precleared by the United States Attorney General on September 23, 1986, after the State of Mississippi had submitted "in its entirety" its Uniform School Law Senate Bill 2117, ch. 492, of which the repealer of § 37–7–611 was a part, to the United States Attorney General for preclearance. Because Federal Regulations require that the United States Attorney General request additional information or offer objections to a submission for preclearance within 60 days, 28 C.F.R. § 51.35 (1986), now 28 C.F.R. 51.9 (1989),[2] and because no specific objection had been made to the repealer of § 37–7–611 by the United States Attorney General when the Bill was submitted "in its entirety" on July 23, 1986,

---

1. The note states that when Congress extended the Voting Rights Act in 1982 it did so out of concern for the prevalence of changes in state voting procedures which had been enacted and never submitted for preclearance.

2. Section 51.9 states:
    (a) The Attorney General shall have 60 days in which to interpose an objection to a submitted change affecting voting.
    (b) Except as specified in §§ 51.37, 51.39, and 51.42 the 60–day period shall commence upon receipt by the Department of Justice of a submission.

(c) The 60–day period shall mean 60 calendar days, with the day of receipt of the submission not counted. If the final day of the period should fall on a Saturday, Sunday, any day designated as a holiday by the President or Congress of the United States or any other day that is not a day of regular business for the Department of Justice, the Attorney General shall have until the close of the next full business day in which to interpose an objection. The date of the Attorney General's response shall be the date on which it is mailed to the submitting authority.

this court held that the United States Attorney General had in effect precleared the repealer of § 37–7–611.

The plaintiffs appealed the panel's finding with regard to the repealer of § 37–7–611 to the United States Supreme Court. Two months after this panel's decision, the United States Supreme Court decided the case of *Clark v. Roemer*, 500 U.S. ——, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991), holding that a State must "identify with specificity each change that it wishes the United States Attorney General to consider" in a § 5 submission, and that "any ambiguity in the scope of a preclearance request must be resolved against the submitting authority." *Id.* at —— —— ——, 111 S.Ct. at 2103–04. Thereafter, this case was remanded to this panel for further consideration in light of *Clark v. Roemer.* *See Dupree v. Moore,* —— U.S. ——, 112 S.Ct. 1462, 117 L.Ed.2d 609 (1992). This court then directed the parties to submit briefs within the scope of the remand by the United States Supreme Court.

So, the narrow issue for this panel to reconsider on remand is whether the State of Mississippi identified the repealer of § 37–7–611 unambiguously and with the specificity required to constitute a proper submission of the matter to the United States Attorney General for preclearance. As earlier stated, upon reconsideration, and in light of *Clark v. Roemer,* we conclude that the State of Mississippi did not.

## PERTINENT FACTS [3]

Mississippi cities are permitted by Miss. Code Ann. §§ 21–1–29, *et seq.,* (1972) [4] to annex territory outside their boundaries by filing a petition in the Chancery Court where the territory is located. Prior to 1986, the status of city school districts, in the event of such municipal expansion, was governed by Miss.Code Ann. § 37–7–611 (1972). [5] When a city annexed territory, § 37–7–611 provided that the municipal school district automatically expanded to become coextensive with the city limits.

In 1986, the Mississippi Legislature enacted the Uniform School Law, Senate Bill 2117, chapter 492, which revised the state education code. Section 47 of this Bill specifically repealed § 37–7–611 and 22 other provisions of state law. In addition, Section 52 of the Bill amended Miss.Code Ann. § 37–7–103 (1972) [6] to provide that, when a city annexed

---

**3.** Defendants-intervenors, Lamar County Board of Education and Trustees and Forrest County School District and Members of the Board of Trustees, argue that summary judgment is not appropriate because there are disputed issues of fact here which require a hearing. *See E.E.O.C. v. Boeing Services International,* 968 F.2d 549, 553 (5th Cir.1992) (where the facts are not in dispute, the court focuses on whether a movant is entitled to judgment as a matter of law). This court is persuaded otherwise and is convinced that the undisputed facts set out herein are all that are necessary to resolve the issue before the court.

**4.** Miss.Code Ann. § 21–1–29 provides in part:

> When any such ordinance (annexing territory) shall be passed by the municipal authorities, such municipal authorities shall file a petition in the chancery court of the county in which such municipality is located; however, when a municipality wishes to annex or extend its boundaries across and into an adjoining county such municipal authorities shall file a petition in the chancery court of the county in which the territory is located....

**5.** Miss.Code Ann. § 37–7–611 (1972) provided in pertinent part:

> Where the corporate limits of any municipality which constitutes a municipal school district, either with or without added territory, are extended so as to include the whole or any part of an existing adjacent school district in the county school system or municipal separate district, then such adjacent school district, or such part thereof as is included within the corporate limits of the municipality by reason of the extension thereof, shall thereby automatically be merged with and become part of such municipal school district....

**6.** Miss.Code Ann. § 37–7–103 as amended provides:

> From and after July 1, 1987, the school board of any school district shall have full jurisdiction, power and authority, at any regular meeting thereof or at any special meeting called for that purpose, to abolish such existing district, or to reorganize, change or alter the boundaries of any such district. In addition thereto, with the consent of the school board of the school district involved, the school board may add to such school district any part of the school district adjoining same, and with the consent of the school board of the school district involved, may detach territory from such school district and annex same to an adjoining district.

neighboring territory, the municipal school district would expand into any already existing school district only with the consent of the school board governing the annexed territory. Together, the repeal of § 37–7–611 and the amendment of § 37–7–103 wrought the following change: when a city now annexed neighboring territory, the municipal school district would expand into the annexed territory only with the consent of the School board governing that territory. Of course, the school board of a municipal school district is generally chosen by the city's elected governing body. Miss.Code Ann. § 37–7–203 (1990).[7]

On July 22, 1986, the State of Mississippi sent the Uniform School Law to the United States Attorney General for preclearance. The cover letter submitted with the School law stated that the School Law (S.B. 2117) was being submitted "in its entirety." The letter stated that, "[f]or the sake of brevity, the submission will only set forth the particular sections which deal primarily with voting rights even though the complete act is submitted for review."

In a portion of this submission letter which was labeled "28 C.F.R. § 51.25(b),"[8] the State described 13 of the 205 sections of the Bill. Section 47 of the Bill, which repealed § 37–7–611, was not specifically described in the State's submission letter. Therefore, the submission did not specifically state that pre-existing Mississippi law provided for automatic expansion of municipal school districts without requiring the consent of the school board governing the annexed territory.

Section 52 of the Bill was among the 13 sections specifically described in the State's submission. As previously stated, Section 52 amended Miss.Code Ann. § 37–7–103 (1972) to provide that, when a city annexed neighboring territory, the municipal school district would expand into any already existing school district only with the consent of the school board governing the annexed territory. The State's cover letter explained that under pre-existing law a county board of education could add territory to a municipal separate school district with the consent of the school board of the district involved. However, the State's explanation said nothing about the previous method of automatic expansion of a municipal school district under § 37–7–611.

In addition to the letter, the State also included with its submission a certified copy of the bill and a looseleaf notebook entitled "Senate Bill Number 2117—Comparison of Current Law and New Law." The 467–page notebook contained the text of each provision of the Uniform School Law, together with photocopied pages containing provisions of prior state law, if any, that were amended by that provision. The text of Section 47 appeared in the enclosed bill and in the notebook, but the texts of the 23 provisions of law repealed by section 47 were not included in the notebook. The text of Section 47 simply stated that 23 cited provisions of state law—including § 37–7–611—that "provide for the creation and operation of municipal separate school districts" are repealed.

On August 29, 1986, the United States Attorney General sent a letter to the Attorney General for the State of Mississippi, Edwin Lloyd Pittman, stating that he had no objection to Senate Bill 2117 as submitted. The United States Attorney General reserved the right to reexamine the matter within the remainder of the 60 day review period. The United States Attorney General also wrote:

> (b) If the change affecting voting is not readily apparent on the face of the document provided under paragraph (a) or is not embodied in a document, a clear statement of the change explaining the difference between the submitted change and the prior law or practice, or explanatory materials adequate to disclose to the Attorney General the difference between the prior and proposed situation with respect to voting.

7. Miss.Code Ann. § 37–7–203(1) provides in pertinent part:

Except as otherwise provided herein, the trustees of such a municipal separate school district shall be elected by a majority of the governing authorities of the municipality at the first meeting of the governing authorities held in the month of February of each year, and the term of office of the member so elected shall commence on the first Saturday of March following.

8. Section 51.25(b) (1986) states:

"The Attorney General does not interpose any objection to the voting changes occasioned by Senate Bill No. 2117 (1986), as identified in your July 22, 1986, letter. However, we feel a responsibility to point out that Section 5 of the Voting Rights Act expressly provides that the failure of the Attorney General to object does not bar any subsequent judicial action to enjoin the enforcement of such a change. In addition, as authorized by Section 5, the Attorney General reserves the right to reexamine this submission if additional information that would otherwise require an objection comes to his attention during the remainder of the sixty-day review period. See also 28 C.F.R. 51.42 and 51.48.

We note that several of the provisions of the Senate Bill No. 2117 (1986) authorize officials of political subdivisions of the State to make changes affecting voting which are viewed as enabling legislation. Therefore, local officials are not relieved of their responsibility to seek preclearance, pursuant to the requirements of Section 5, of any changes affecting voting (e.g., changing voting precinct lines, polling places, special election dates and procedures, boundary changes, etc.) which are adopted as a result of Senate Bill No. 2117. 28 C.F.R. 51.14."

Based on this portion of United States Attorney General's letter, the State of Mississippi says that it was confused about the preclearance of Senate Bill 2117. The State's cover memorandum to the United States Attorney General discussed only 13 sections of the bill, those sections the State of Mississippi determined were most relevant to voting rights. The repealer of § 37–7–611 was not one of the 13 sections set forth. Because of the wording of the August 29, 1986, letter, the State of Mississippi says it did not understand whether only those 13 sections were being approved, or whether the United States Attorney General was considering all the rest of 2117.

So, on December 30, 1987, the State of Mississippi resubmitted the repealer of Miss. Code Ann. § 37–7–611 for affirmative preclearance. This resubmission included Section 47 of the Uniform School Act and explained that it was the automatic expansion of municipal school districts which had been repealed.

On February 29, 1988, the United States Attorney General requested extensive additional information regarding the repealer of § 37–7–611. This request came at the time of statewide election campaigning and was not immediately addressed by the State. After the election, the State of Mississippi submitted the requested information on January 27, 1989.

After reviewing the information submitted by the State of Mississippi, the United States Attorney General objected to the repealer of § 37–7–611 on March 31, 1989. The Attorney General concluded that repealing the automatic annexation provision of § 37–7–611 would "create a class of city voters who will not reside in the city school system yet may vote for the city governing body ... which under Mississippi law appoints the city school board." The United States Attorney General noted that the State had provided "no explanation for the establishment of such political system which appears not only to have the potential to impact negatively on the influence of minority city school district residents but also to treat black voters differently than white voters."

The State of Mississippi elected not to pursue at that time a declaratory judgment before the United States District Court for the District of Columbia, opting instead on January 12, 1990, to make a formal request to the United States Attorney General that he reconsider and withdraw his objection. The State argued that Section 47 had been sufficiently described in its initial submission as providing for the creation and operation of municipal separate school districts. The State also argued that the School Law had been submitted in its entirety. Hence, reasoned the State, the United States Attorney General had no authority to grant limited preclearance of a law submitted in its entirety.

The State's arguments did not convince the United States Attorney General and by letter of May 25, 1990, he declined to withdraw his March, 1989, objection. In his letter, the United States Attorney General specifically

responded to the State's contention that the repealer of § 37–7–611 necessarily had been precleared in 1986, stating:

> Section 5, as interpreted by the courts and our guidelines, plainly fixed the responsibility for identifying voting changes on the state, not the United States Attorney General, yet the state appears to be arguing … that the Attorney General should have uncovered voting changes of which the state itself seemingly was unaware at the time the prior submissions were made.

So, during the period of July 22, 1986, until May 25, 1990, although the State of Mississippi and the United States Attorney General had addressed preclearance of Mississippi's Uniform School Law, the parties had reached no common agreement with respect to the repealer of § 37–7–611. The Attorney General concluded that the statute had not been precleared, while the State said that it had. This lawsuit was born in February 1990, after the City of Hattiesburg had annexed neighboring territory in Forrest and Lamar Counties in 1989.

## ANALYSIS

The juridical polestar which illuminates the key points of law here and leads us decisively to a solution is the case of *Clark v. Roemer,* 500 U.S. ——, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991), the decision upon which the remand of this case from the United States Supreme Court is based. Decided pursuant to § 5 of the Voting Rights Act of 1965, *Clark* fleshed out the skeletal question of what constitutes requisite notice by a state in a submission to the United States Attorney General under § 5. The specific interrogatory before the *Clark* Court was whether in preclearing newer portions of legislation the Attorney General also had approved undiscussed, unprecleared, older portions of the legislation where the newer and older portions interlocked to comprise the enactment. Emphasizing the obligation of States to provide requisite notice to the Attorney General of all prior unprecleared voting changes, the Court answered the question in the negative, first commenting that *"McCain [McCain v. Lybrand,* 465 U.S. 236, 104 S.Ct. 1037, 79

L.Ed.2d 271 (1984) ] establishes a presumption that the Attorney General will review only the current changes in election practices effected by the submitted legislation, not prior unprecleared changes reenacted in the amended legislation." *Id.* 500 U.S. at ——, 111 S.Ct. at 2104. Then, added the Court:

> In light of its legal errors, the District Court's finding that the Attorney General "expressly approved" the prior unprecleared changes cannot stand. Neither the initial submission nor the Attorney General's ruling upon it can be deemed to include the earlier unprecleared seats. Louisiana's submissions of contemporary legislation to the Attorney General failed as a matter of law to put him on notice that the prior unsubmitted changes were included. None of the submissions informed the Attorney General that prior voting changes were uncleared and were being transmitted along with the new changes. In most instances, Louisiana submitted only the legislation containing the new voting change. The record contains five submission letters, but these communications do not give requisite notice. Two were mere cover letters that added nothing to the submitted legislation. The other three letters note changes in the number of judges in a District, but as we have explained, this alone does not constitute a submission of the prior uncleared changes.

*Id.* at ——, 111 S.Ct. at 2104–05.

Hence, the *Clark* Court held that a State must "identify with specificity each change that it wishes the Attorney General to consider" in a § 5 submission. *Id.,* at ——, 111 S.Ct. at 2104. Further, stated the Court, "any ambiguity in the scope of a preclearance request must be resolved against the submitting authority." *Id.,* at ——, 111 S.Ct. at 2103. Explaining the rationale for this approach, the Court pointed to the "redoubtable obligations" of the Attorney General generated by the sheer volume of electoral changes—some 17,000—submitted each year to the Justice Department which is tasked with undertaking independent investigations on limited resources. *Id.,* at ——, 111 S.Ct. at 2104. The Court also voiced its apprehensions that a contrary approach "would dimin-

ish covered jurisdictions' responsibilities for self-monitoring under § 5 and would create incentives for them to forego the submission process altogether." *Id.* 111 S.Ct. at 2104.

Upon measuring the facts *sub judice* by the bedrock principles enunciated by *Clark*, we conclude that the repeal of § 37–7–611 by the Uniform School Law was not precleared when the Attorney General precleared the voting changes as identified in the State's 1986 letter. In its 1986 submission, Mississippi affirmatively identified and discussed only 13 provisions of the Uniform School Law. Only those provisions, identified with specificity, then were properly submitted for preclearance. Thus, the Attorney General's letter of August 29, 1986, wherein he stated that he did "not interpose any objection to the voting changes occasioned by Senate Bill No. 2117 (1986) as identified in your [the State of Mississippi's] July 22, 1986, letter," precleared only the specifically identified changes noted in the 13 provisions.

Further, the State's submission letter did not mention Section 47 or § 37–7–611 at all. Hence, the State's submission failed to mention that pre-existing Mississippi law provided for automatic expansion of municipal school districts without requiring the consent of the school board governing the affected, annexed territory. Although the State's submission letter did discuss Section 52, in that portion of the submission letter the State did not discuss the repealed matter of automatic expansion. In discussing Section 52, the State merely explained the consent factor relative to alterations of school district boundaries. So, even if Section 52 in effect amounted to a repeal of § 37–7–611 by operation of state law, that fact was not submitted to the Attorney General in 1986 nor reviewed by him as such.[9]

Nor did the State discuss, mention, or allude to the automatic expansion provision of § 37–7–611 in the 467–page looseleaf notebook entitled "Senate Bill Number 2117— Comparison of Current Law and New Law" it submitted with its cover letter. While the text of Section 47 appeared in the notebook, the texts of the 23 provisions repealed by Section 47 were not included. The accompanying explanation provided in the text—that the repealed sections "provide for the creation and operation of municipal school districts"—neither refers to any voting change nor addresses at all the repeal of the automatic expansion provision.

In the past, Mississippi admitted that after receiving the United States Attorney General's letter of August 29, 1986, wherein the Attorney General discussed only 13 sections of the Bill, Mississippi was uncertain whether the United States Attorney General had considered the repealer of § 37–7–611. So, to resolve this ambiguous circumstance, the State resubmitted the repealer of § 37–7–611, since it was not one of the 13 sections set forth in the Attorney General's letter. Apparently, the State of Mississippi now asks this court to forget these facts since "any ambiguity in the scope of a preclearance request must be resolved against the submitting authority." *Clark v. Roemer*, 500 U.S. at ——, 111 S.Ct. at 2103.

In sum, Mississippi's 1986 submission is precisely that circumstance condemned by *Clark v. Roemer*. Should this court permit Mississippi to submit a haystack of documents and obligate the Attorney General to painstakingly search for any voting change needle, as Mississippi has done here, this court would be ignoring *Clark's* clear pronouncement that a State must "identify with specificity each change that it wishes the Attorney General to consider" in a § 5 submission. *Id.*, at ——, 111 S.Ct. at 2104. Similarly, Mississippi's stance that the repealer of § 37–7–611 stands precleared because the Uniform School Law was submitted "in its entirety," if accepted by this court, would but "add to the Attorney General's already redoubtable obligations the additional duty to research each submission to ensure that all earlier unsubmitted changes had been brought to light," *id.*, and undoubtedly "diminish covered jurisdictions' responsibili-

---

9. Hence, this court does not find persuasive the holding in *Greenville Public School District v. Western Line Consolidated School District*, 575 So.2d 956 (Miss.1990), *cert. denied*, —— U.S.

——, 112 S.Ct. 1512, 117 L.Ed.2d 649 (1992), which held that the Attorney General had in effect precleared the repeal of § 37–7–611 when he precleared Section 52.

ties for self-monitoring under § 5 and would create incentives for them to forego the submission process altogether." *Id.*

### CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the motion of the defendants and intervenors for summary judgment that the repealer of Miss.Code Ann. § 37–7–611 was precleared on September 23, 1986, is not well taken and the same is hereby denied. The plaintiffs' motion for summary judgment is granted. The repealer of Miss. Code Ann. § 37–7–611 is hereby found to be ineffective and unenforceable unless and until the State of Mississippi gets either the United States Attorney General to preclear the repealer, or to withdraw his objection, or the State of Mississippi obtains a declaratory judgment from the District of Columbia District Court stating that the repealer has no discriminatory effect upon voting rights in Mississippi.

**SO ORDERED AND ADJUDGED.**

BARKSDALE, Circuit Judge, dissenting:

In April 1991, this court held, *inter alia,* that, as part of the Uniform School Law of 1986, the repealer of Miss.Code Ann. § 37–7–611 (the repealer) was properly submitted by Mississippi for preclearance, as required by § 5 of the Voting Rights Act of 1965 (Act), 42 U.S.C. § 1973c. We therefore granted summary judgment that the repealer is enforceable. *Dupree v. Mabus,* 776 F.Supp. 290 (*Dupree I* ). Only that portion of the judgment was appealed; and the Supreme Court remanded this case for further consideration in light of *Clark v. Roemer,* 500 U.S. ——, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991). The sole issue before us is whether the State identified the repealer with specificity, thus properly submitting it for preclearance. Relying on *Clark,* the majority concludes that the State did not sufficiently do so. I disagree, and thus respectfully dissent.

### I.

The plaintiffs, residents and registered voters of Hattiesburg, Mississippi, and members of the Board of Trustees of its school district, filed this action in February 1990 against the State of Mississippi and its Governor [1] and Attorney General, alleging that several statutes had not received the requisite § 5 preclearance and are therefore unenforceable. Hattiesburg is located in Lamar and Forrest Counties; their Boards of Education and Trustees intervened as defendants.

The Act provides that certain jurisdictions may not implement any "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964" without first obtaining approval from the United States District Court for the District of Columbia or, alternatively, from the United States Attorney General (USAG), that the proposed change does not, or will not, have a discriminatory purpose or effect. 42 U.S.C. § 1973c.

The plaintiffs challenged three laws that affect the composition of municipal and county school districts: (1) the 1977 amendment to Miss.Code Ann. § 21–1–59, Ch. 379, 1977 Miss.Laws 543; (2) the 1978 revision of that amendment, Ch. 312, 1978 Miss.Laws 418; and (3) the repealer of § 37–7–611—§ 47 of the 1986 Uniform School Law, Ch. 492, 1986 Miss.Laws 687. The amendments and the repealer have the same effect—municipal school districts no longer automatically expand to the same extent as the municipal annexations, resulting in a class of city voters who do not reside in the city school system but may vote for the city governing body; that body in turn elects the municipal school board. 776 F.Supp. at 299–300, 304 n. 8.

This court held in *Dupress I* that the creation of this class constitutes at least an indirect change in voting, covered by § 5 of the Act. 776 F.Supp. at 299–300. Upon so holding, it examined whether the challenged laws had been precleared. *See id.,* at 293–96, 300–04. It held that the 1977 and 1978 amendments to § 21–1–59 had not been precleared and, accordingly, are not enforceable. Conversely, it concluded that the USAG precleared the Uniform School Law of 1986 in

---

**1.** The Governor was dismissed from the action.

776 F.Supp. at 296–97.

its entirety, including the repealer, and therefore held that the repealer is enforceable. *Id.,* at 303–04.

## II.

Plaintiffs contend, and the majority agrees, that *Clark* compels the conclusion that the State did not adequately identify the repealer. As stated, I respectfully disagree. *Clark* and its precursor, *McCain v. Lybrand,* 465 U.S. 236, 104 S.Ct. 1037, 79 L.Ed.2d 271 (1984), both involve a State's failure to submit a specifically identifiable preclearance request and are therefore factually distinguishable from this case.

*Clark* involved a challenge under § 5 to the validity of Louisiana's multimember, at-large electoral scheme for certain judicial positions. In response to a July 1987 amended complaint concerning Louisiana's failure to submit several statutory and constitutional voting changes for preclearance, it submitted all of its unprecleared voting changes. The USAG granted preclearance for some, but objected to others. Louisiana asked the USAG to reconsider his objections and continued with plans to hold elections in the fall of 1990.

In October 1990, the three-judge court grouped into one category those districts where Louisiana had obtained preclearance for later-created judgeships, but not the earlier created judgeships in issue.[2] The district court, despite the USAG's objections, held that the USAG's preclearance of later, related voting changes resulted in preclearance of the earlier, unprecleared judgeships.[3]

The Supreme Court disagreed. It stated that the district court's ruling was inconsistent with the presumption established in

*McCain,* that the USAG reviews "current changes in election practices effected by the submitted legislation, not prior unprecleared changes reenacted in the amended legislation". *Clark,* 500 U.S. at ——, 111 S.Ct. at 2104. The Court emphasized that in order to minimize the administrative burden on the USAG, the State "must identify with specificity each change that it wishes the Attorney General to consider"; it also repeated that "any ambiguity in the scope of the preclearance request must be resolved against the submitting authority". *Id.* Accordingly, the Court did not alter the standard for § 5 preclearance requirements; rather, it reiterated the principles stated in *McCain,* and emphasized the need to maintain "the efficacy of administrative preclearance under § 5". *Clark,* 500 U.S. at ——, 111 S.Ct. at 2102.

In *McCain,* discussed at length in *Dupree I,* 776 F.Supp. at 302–03, the district court provided two alternatives to support its conclusion that the USAG precleared a 1966 Act. It reasoned that because the State submitted the 1966 Act in response to a request by the USAG for additional information, the 1966 Act was part of the preclearance submission. Alternatively, it reasoned that because a 1971 Act retained or incorporated the 1966 Act, lack of objection to the 1971 submission resulted in preclearance of the 1966 Act.

The Supreme Court reversed and set forth three general principles: first, it stated that the submission, not subsequent responses, defines the scope of the request; second, it reiterated that ambiguity is resolved against the submitting authority; and third, it clarified that the submission of a current change does not encompass prior unprecleared

2. In a second category, the district court grouped unprecleared judgeships subject to valid objections by the USAG. Despite its conclusion that these unprecleared judgeships violated § 5, the court refused to enjoin the elections. The Supreme Court held that the court erred by not enjoining elections held for judgeships to which the USAG had valid § 5 objections. *Clark,* 500 U.S. at ——, 111 S.Ct. at 2101. The Court's analysis concerning this second category is not relevant to the issue before this court.

3. The following is an example of the district court's reasoning:

Louisiana submitted and obtained approval for Divisions E (created in 1966, precleared in 1986), G (created and precleared in 1976), H (created and precleared in 1978), and I (created and precleared in 1982). Division F was not submitted for approval when it was created in 1973; rather, it was submitted and objected to in 1978.... [However,] because the legislation creating Divisions G, H, and I added to the number of prior judgeships in Caddo Parish, including Division F, approval of the legislation constituted approval of Division F. *Clark,* 500 U.S. at ——, 111 S.Ct. at 2100.

changes. *McCain*, 465 U.S. at 251, 257, 104 S.Ct. at 1046–47, 1050.

Despite the Supreme Court's rejection of the district court's reasoning in *McCain*, the district court in *Clark* applied similar reasoning:

> When the Attorney General approves the new act, he not only approves the amended portion but necessarily approves the older, reenacted part, which forms part of the new act. Thus, when an act provides for a certain number of judicial positions, approval of that act must include all of the judicial positions necessary to reach that number.

*Clark v. Roemer*, 751 F.Supp. 586, 593 (M.D.La.1990) (footnote omitted).

The Supreme Court again rejected this reasoning: "The District Court's explanation for its holding replicates the precise factual and legal errors we identified in *McCain* .... A submission's description of the change from one number of judges to another in a particular judicial district does not, by itself, constitute a submission to the Attorney General of the prior voting changes incorporated in the newly amended statute". *Clark*, 500 U.S. at ——, 111 S.Ct. at 2104.

Unlike *McCain*, Mississippi submitted the repealer as part of its initial submission; therefore, the repealer defined the scope of that part of the request. Moreover, Mississippi specifically identified the repealer as a current change; unlike *McCain* and *Clark*, it was not a prior, uncleared change presumably encompassed by the submission of a current change.[4]

Finally, the submission was neither ambiguous nor vague.[5] The title of the submitted law, the Uniform School Law of 1986, indicates a massive reorganization ·of various laws. The cover memorandum submitted by the State explained the comprehensive nature of the submission and stated that the law was submitted "in its entirety". The memorandum specifically advised the USAG that "[f]or the sake of brevity, the submission will only set forth the particular sections which deal *primarily* with voting rights *even though the complete act is submitted for review*". (Emphasis added.) *Dupree I*, 776 F.Supp. at 294–95.

Section 37–7–611, enacted in 1926, was repealed in 1986 by § 47 of the Uniform School Law. As stated, § 37–7–611 provided for a municipal school district to expand automatically into territory annexed by the city.[6] Although § 47 of the Uniform School Law, the repealer, was not discussed in the cover letter, which explained 13 sections of the Uniform School Law and their effect on voting, it was specifically identified in the booklet that accompanied the submission. The booklet

---

4. By contrast, in *Dupree I*, this court held that Mississippi failed as a matter of law to put the USAG on notice that the 1977 amendment was submitted for preclearance. Using language similar to that later used by the Supreme Court in *Clark*, we concluded that defendants' contention that approval of the 1978 amendment cured the failure to submit the 1977 amendment for preclearance was specifically rejected by the·Supreme Court in *McCain* and therefore without merit. 776 F.Supp. at 303.

5. The United States asserts that the USAG's response letter of August 29, 1986, stating that he did "not interpose any objection to the voting changes occasioned by [the Uniform School Law] as identified in your July 22, 1986, letter", indicates that the USAG only precleared the 13 changes identified in the cover memorandum, not the repealer identified in the accompanying materials. In *Dupree I*, we fully considered and rejected this interpretation. 776 F.Supp. at 303. Accordingly, I disagree with the majority's reliance on the State's resubmission subsequent to

receipt of the USAG's response letter. The USAG's letter specifically mentioned only those 13 changes discussed in the cover memorandum and thus understandably caused the State to question whether the USAG precleared the remainder of the Act. By contrast, the State's ·submission letter specifically advised that "the complete act is submitted for review".

6. The section stated in part:

> Where the corporate limits of any municipality which constitutes a municipal separate school district, either with or without added territory, are extended so as to include the whole or any part of an existing adjacent school district in the county school system or municipal separate school district, then such adjacent school district, or such part thereof as is included within the corporate limits of the municipality by reason of the extension thereof, shall thereby automatically be merged with and become a part of such municipal separate school district.

Miss.Code Ann. § 37–7–611 (1972).

compared each section of the Uniform School Law with prior law, together with providing an underlined version of the Uniform School Law, reflecting new language as well as deletions of prior language. *Id.* The booklet's introductory note explained that "[b]y comparing each section of [the Uniform School Law] and the current practice, the changes to current law are easily identified". As discussed, § 47 of the Uniform School Law provided for the repeal of 23 sections, including the above described § 37–7–611. The booklet stated that these 23 sections "which provide for the *creation and operation of municipal separate school districts,* are hereby repealed". *Dupree I,* 776 F.Supp. at 295 (emphasis added).

In addition, § 52 of the Uniform School Law amended § 37–7–103 and provided a single procedure in place of the prior, several school districting procedures. It was specifically discussed in both the cover memorandum accompanying the submission (it was one of the 13 specifically identified sections) and in the booklet. *See Dupree I,* 776 F.Supp. at 295–96. In describing this new uniform procedure under amended § 37–7–103, the cover memorandum stated in part:

> ... [T]he school board with the consent of the school board of the district involved may add to such school district any part of the school district adjoining same or may detach territory from such school district and annex the same to an adjoining district.

*Dupree I,* 776 F.Supp. at 295.

Accordingly, the submission specifically identified both the repealer and the replacement. And, as should have been clear to the USAG, through review of the identified sections, a new, single procedure was replacing, *inter alia,* the prior procedure for municipal separate school districts, one of which was their automatic expansion into annexed areas. Therefore, what more *should—not*

*could*—have been done? Again, *McCain* and *Clark* must be considered.

In *Clark,* the Court stated that adherence to the district courts' rationale in *McCain* and *Clark* would "upset[ ] th[e] ordering of responsibilities under § 5". 500 U.S. at ——, 111 S.Ct. at 2104. It stressed that it is the responsibility of covered jurisdictions to submit unprecleared changes for review; to conclude that preclearance of a current change includes unidentified prior unprecleared changes "would add to the Attorney General's already redoubtable obligations the additional duty to research each submission to ensure that all earlier unsubmitted changes had been brought to light". *Id.* The Court "reaffirm[ed] *McCain* in rejecting this vision of § 5", because "[s]uch a rule would diminish covered jurisdictions' responsibilities for self-monitoring under § 5 and would create incentives for them to forgo the submission process altogether." *Id.*[7]

Here, however, the submission of the repealer meets the requisite level of specificity; it did not impose an administrative burden of the same quality and magnitude as that at issue in *Clark*—far from it. As discussed, Mississippi specifically identified the submitted change. The State did not impose upon the USAG the added responsibility of conducting independent research to locate an unprecleared prior or related change not identified in the submission. The booklet specifically identifying the repealer accompanied the cover memorandum. No doubt, the State *could* have been *more* helpful by including the text of the repealed statute; however, the regulations then in effect *did not require* covered jurisdictions to submit a copy of the prior law being amended or repealed. 28 C.F.R. § 51.25 (1986).[8] *See* 776 F.Supp. at 300. And, no doubt, it *could* have been even more helpful by describing how the § 37–7–611 automatic municipal school district expansion procedure repealed by § 47 of the Uniform School Law was one of the procedures replaced by the procedure established by § 52 of that law. *See* 776

---

7. *See* note 4, *supra,* concerning this court reaching this same result in *Dupree I.*

8. The current regulation requires "[a] copy of any ordinance, enactment, order, or regulation embodying the voting practice that is proposed

F.Supp. at 302–03.[9]   The test, however, is not whether the State was as helpful as, with 20–20 hindsight, it could have been, but whether it put the USAG on notice that the repealer was submitted for preclearance.   I would hold, as this court did in *Dupree I*, that the State satisfied that test.

Accordingly, I respectfully dissent.

---

to be repealed, amended, or otherwise changed''. 28 C.F.R. § 51.27 (1992).

**9.**  The plaintiffs complain that the State did not advise the USAG that § 52 was the *sole* method for such districting.   But, as discussed in *Dupree I*, 776 F.Supp. at 303, the entire, *uniform* law was submitted.